JOHN H. YOUNG AND CAROLYN J. YOUNG, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 25203–82.      Filed November 29, 1984.

*Edward D. Urquhart*, for the petitioners.
*Marion S. Friedman*, for the respondent.

FEATHERSTON, *Judge*: Respondent determined a deficiency in the amount of $48,722.49 in petitioners' Federal income tax for 1977. Petitioners allege that respondent's determination is erroneous and they claim an overpayment of $23,191 in their income tax for the same year. The parties have stipulated that petitioners incurred a net operating loss in the amount of $223,964 for 1976. The only issue for decision is whether

petitioners made an effective election, as required by section 172(b)(3)(E),[1] to relinquish the entire carryback period with respect to their 1976 net operating loss, which would thereby allow them to carry such loss forward in its entirety to 1977.

## FINDINGS OF FACT

At the time they filed their petition in this case, petitioners, who were husband and wife during 1977, the year at issue, resided in Houston, TX. They filed joint Federal income tax returns for the years 1972 through 1977. Petitioners' Federal income tax returns for the years 1974 through 1977 were prepared by Frank C. Williams, a certified public accountant.

Petitioners' 1976 Federal income tax return was timely filed on October 17, 1977, its due date after extensions. In this return, petitioners reported their 1976 taxable income as "None." Attached to petitioners' 1976 Form 1040 is Form 4625, Computation of Minimum Tax. Line 11 of Form 4625 provides as follows: "Enter amount of any 1976 net operating loss carryover to 1977 (attach statement showing computation)." The amount entered in line 11 is $131,334.89. No computation statement, as directed under line 11, is attached to the return. The return contains no other information concerning petitioners' 1976 net operating loss, or net operating losses from other years.

Petitioners timely filed their 1977 Federal income tax return. Attached to petitioners' 1977 Form 1040 is Supporting Statement 19 which provides the following information:

*Net Operating Loss Carryover*

| | |
|---|---|
| 1975 | $105,255 |
| 1976 | 139,298 |
| Total net operating loss carryover to 1977 | 244,553 |

As a result of agreed audit changes made with respect to their 1976 return, petitioners filed a Form 1040X, Amended U.S. Individual Income Tax Return, for 1976. The amended return for 1976 was dated November 25, 1980, postmarked November 26, 1980, and received by respondent on December 2, 1980; it was submitted after the due date of the return, but

---

[1]All section references are to the Internal Revenue Code of 1954 as amended in the form in which the several provisions were effective for the years in issue.

within the statutory period prescribed for filing a claim for refund for petitioners' 1976 taxable year.

Attached to the 1976 Form 1040X, as it was to the 1976 Form 1040, is Form 4625, Computation of Minimum Tax. Line 11 of Form 4625 provides as follows: "Enter amount of any 1976 net operating loss carryover to 1977 (attach statement showing computation)." The amount entered on line 11 is $223,395.26. Also entered on line 11 is a reference to statement I which is attached to the 1976 Form 1040X, and is entitled "Net Operating Loss Computation." Statement I contains the recalculation of petitioners' 1976 net operating loss, and also states as follows:

### ELECTION

In accordance with regulation section 7.0(d) taxpayer elects or has previously elected to forego the carryback period of the 1976 net operating loss deduction.

Petitioners' accountant included the election statement on the amended return because the revenue agent who audited petitioners' original 1976 return did not agree that petitioners had effectively elected to relinquish the carryback period of their 1976 net operating loss on their original 1976 return.

Petitioners filed a Form 1040X, Amended U.S. Individual Income Tax Return, for 1977 as well. In Schedule II, attached to the 1977 Form 1040X, petitioners provided the following information:

|  | As filed | As amended | Change |
|---|---|---|---|
| 1975 Net operating loss carryover | $105,255 | None | [1]$105,255 |
| 1976 Net operating loss carryover | 139,298 | 223,395 | [2](84,097) |
| Net increase to income |  |  | 21,158 |

[1]Amount of 1975 net operating loss required to be carried back to 1972, 1973, and 1974 due to IRS examination of 1974 and 1975 partnership return for Douglas Park, Ltd ........ 105,255

[2]Adjustment for nonbusiness income allowed as additional net operating loss per Form 1040X for 1976 dated 11/26/80 ........ 99,449

Decrease in operating expenses for 1976 per Form 1040X for 1976 dated 11/26/80 ........ (15,352)

Additional net operating loss carryover from 1976 ........ 84,097

Total net operating loss for 1976 ........ 223,395

Less: amount carried back ........ None

Amount of 1976 net operating loss carried to 1977 ........ 223,395

In the notice of deficiency for 1977, respondent determined that petitioners failed to make a valid election under section 172(b)(3)(C)[2] to relinquish the entire carryback period of their 1976 net operating loss, and, therefore, under section 172(b)(1), petitioners' 1976 net operating loss must be carried back to the 3 preceding years before it may be carried forward to 1977.

## OPINION

As a general rule, section 172(b), as in effect during 1977, provides that net operating losses must first be carried back to the 3 years preceding the loss year, and, if unabsorbed by those years, then carried forward to the 7 years following the loss year. Section 172(b)(3)(E), enacted as part of the Tax Reform Act of 1976, however, provides that for any taxable year ending after December 31, 1975, a taxpayer otherwise entitled to a carryback period under section 172(b)(1) may elect to relinquish the entire carryback period with respect to a net operating loss for such year. The statute further expressly provides that the election to relinquish the carryback period shall be made by the due date, including extensions of time, for filing the taxpayer's return for the year of the net operating loss for which the election is to be in effect, and, that the election, once made, shall be irrevocable. The statute directs that the election shall be made in the manner prescribed by the Secretary.[3]

----

[2] In the notice of deficiency, respondent determined that petitioners failed to make a valid election under sec. 172(b)(3)(C). For 1977, the year at issue, the election provision in question was contained in sec. 172(b)(3)(E).

[3] SEC. 172. NET OPERATING LOSS DEDUCTION.

(b) NET OPERATING LOSS CARRYBACKS AND CARRYOVERS.—

(1) YEARS TO WHICH LOSS MAY BE CARRIED.—

(A)(i) Except as provided in clause (ii) and in subparagraphs (D), (E), (F), and (G), a net operating loss for any taxable year ending after December 31, 1957, shall be a net operating loss carryback to each of the 3 taxable years preceding the taxable year of such loss.

\*    \*    \*    \*    \*    \*    \*

(B) Except as provided in subparagraphs (C), (D), and (E), a net operating loss for any taxable year ending after December 31, 1955, shall be a net operating loss carryover to each of the 5 taxable years following the taxable year of such loss.

Except as provided in subparagraphs (C), (D), (E) and (F), a net operating loss for any taxable year ending after December 31, 1975, shall be a net operating loss carryover to each of the 7 taxable years following the taxable year of such loss.

\*    \*    \*    \*    \*    \*    \*

(2) AMOUNT OF CARRYBACKS AND CARRYOVERS.—Except as provided in subsection (g), the

In accordance with the statutory mandate, the Secretary promulgated Temporary Regs. section 7.0 (T.D. 7459), published in the Federal Register for January 7, 1977, and in the Internal Revenue Bulletin for February 14, 1977. See 42 Fed. Reg. 1469 (1977); 1977-7 I.R.B. 27, and 1977-1 C.B. 587. Temporary Regs. section 7.0 is entitled "Various Elections under the Tax Reform Act of 1976" and, as the title implies, it prescribes the procedure for making elections with respect to certain provisions added to the Code by the Tax Reform Act of 1976, including, among others, the election under section 172(b)(3)(E). Concerning the time for making the election, Temporary Regs. section 7.0(b)(1) follows the statute; it provides that an election under section 172(b)(3)(E) must be made by the later of March 8, 1977, or the due date of the return, including extensions, for the year for which the election is made. As to the manner in which such election is to be effected, Temporary Regs. sec. 7.0(d) provides as follows:

(d) *Manner of making election.* Unless otherwise provided in the return or in a form accompanying a return for the taxable year, the elections described * * * shall be made by a statement attached to the return (or amended return) for the taxable year. The statement required when making an election pursuant to this section shall indicate the section under which the election is being made and shall set forth information to identify the election, the period for which it applies, and the taxpayer's basis or entitlement for making the election.

It is undisputed that petitioners failed to attach a separate statement to their original return for 1976 specifically indicating their intent to elect to relinquish the carryback period of

---

entire amount of the net operating loss for any taxable year (hereinafter in this section referred to as the "loss year") shall be carried to the earliest of the taxable years to which (by reason of paragraph (1)) such loss may be carried. The portion of such loss which shall be carried to each of the other taxable years shall be the excess, if any, of the amount of such loss over the sum of the taxable income for each of the prior taxable years to which such loss may be carried. * * *

    \*    \*    \*    \*    \*    \*    \*

(3) SPECIAL RULES.—

    \*    \*    \*    \*    \*    \*    \*

(E) Any taxpayer entitled to a carryback period under paragraph (1) may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year ending after December 31, 1975. Such election shall be made in such manner as may be prescribed by the Secretary, and shall be made by the due date (including extensions of time) for filing the taxpayer's return for the taxable year of the net operating loss for which the election is to be in effect. Such election, once made for any taxable year, shall be irrevocable for that taxable year.

their 1976 net operating loss. The issue before us is whether they made an effective election, nonetheless, either under the literal terms of Temporary Regs. section 7.0(d), or because they have substantially complied with the election requirements. For the reasons that we shall discuss, we conclude that petitioners have neither literally nor substantially complied with the election requirements of the regulations; they have thus failed properly to elect to relinquish the carryback period of their 1976 net operating loss.

Contending that "The regulation obviously does not require a written statement attached to the return in every case to perfect the election," petitioners first argue that because, on their original 1976 return, they reported no taxable income and indicated on line 11 of Form 4625, Computation of Minimum Tax, that a net operating loss in the amount of $131,334.89 for 1976 was being carried forward to 1977, they have complied with the literal requirements of Temporary Regs. section 7.0(d) in that the election was either "otherwise provided in the return," or was made "in a form accompanying a return." We do not agree.

It is true that the temporary regulations require a separate statement only if the manner for making the election is not provided for in the return itself or in a form accompanying the return.[4] In the case of the election under section 172(b)(3)(E), however, there is no line entry on the return, itself, nor is there a prescribed form which specifically provides for the election to relinquish the carryback period of a net operating loss. For purposes of this election, therefore, it would appear that a separate statement is necessary in order to be in literal compliance with the regulations.[5]

---

[4]Temporary Regs. sec. 7.0 covers a variety of elections. It was thus reasonable for its authors (and readers) to anticipate that, for certain elections, more specific means of election might be provided on the face of the return, or in specialized forms. In such a case, it would be unnecessary for a taxpayer to attach an election statement described in the second sentence of the temporary regulation.

[5]The 1976 Instructions for Form 1040 and Schedules A, B, C, D, E, F, R, RP, and SE, and Form 2441 states, in pertinent part, on page 11, as follows:

"Net Operating Loss.—If you lost money in a trade or business in 1976, you can subtract the loss from your 1976 income. * * *

"If your losses were more than your income, the difference may result in a 'net operating loss.' Generally, you can use it to reduce your income for the three years before 1976 and the seven years after, OR YOU MAY ELECT to use it to reduce your income for the seven following years. If you decide to carry back the loss and are due a refund from the 'carryback,' you may use Form 1045 to get a quick refund. BUT if you elect to carry the loss forward instead, attach a statement to this

Moreover, we do not accept petitioners' argument that the election was "otherwise provided in the return" or was made in a "form accompanying a return," merely because they reported no taxable income on their original 1976 return and reported a net operating loss carryover of $131,334.89 from 1976 to 1977 on line 11 of Form 4625 for purposes of the computation of minimum tax. That petitioners reported no taxable income for 1976 indicates nothing concerning either the existence or the extent of a net operating loss for that year,[6] or any intention to carry the net operating loss forward or backward. Further, the mere fact that line 11 on Form 4625 contains an entry indicating a net operating loss carryover of $131,334.89 from 1976 to 1977 also indicates nothing with respect to the amount of a 1976 net operating loss, or petitioners' intent to relinquish the carryback period for such loss.

Form 4625, as its title makes clear, deals only with the computation of the minimum tax prescribed by section 56 which imposed, for tax years beginning after December 31, 1975, a minimum tax—a tax in addition to other taxes—of 15 percent on individuals and other noncorporate taxpayers with respect to certain enumerated tax preference items. Line 11 of Form 4625 reflects the provisions of section 56(b)[7] which provides that part or all of the minimum tax may be deferred to a subsequent year if the taxpayer incurred a net operating loss in the first year, "any portion of which remains as a net operating loss carryover to a succeeding taxable year." Sec. 56(b)(1)(A). The deferral, beginning with 1976, is the lesser of

---

effect on a timely filed return (including extensions). If you make such an election for 1976, it cannot be changed later."

[6]Sec. 172(d) lists a series of "modifications" to "the excess of the deductions allowed * * * over the gross income" which must be made in computing a "net operating loss."

[7]SEC. 56. CORPORATE MINIMUM TAX.

(b) DEFERRAL OF TAX LIABILITY IN CASE OF CERTAIN NET OPERATING LOSSES.—

(1) IN GENERAL.—If for any taxable year a corporation—

(A) has a net operating loss any portion of which (under section 172) remains as a net operating loss carryover to a succeeding taxable year, and

(B) has items of tax preference in excess of $10,000,

then an amount equal to the lesser of the tax imposed by subsection (a) or 15 percent of the amount of the net operating loss carryover described in subparagraph (A) shall be treated as tax liability not imposed for the taxable year, but as imposed for the succeeding taxable year or years pursuant to paragraph (2).

See H. Rept. 94-658, Tax Reform Act of 1976, 1976-3 C.B. (Vol. 2) 701, 824 (1976); Staff of Joint Comm. on Taxation, 94th Cong., 2d Sess., General Explanation of the Tax Reform Act of 1976, 1976-3 C.B. (Vol. 2) 1, 107.

the minimum tax imposed for the year or 15 percent of the portion of the unused net operating loss that is available for carryovers. In its carryover year, a 15-percent tax is imposed on the amount by which taxable income is reduced by the portion of the carryover attributable to loss year tax preference items in excess of $10,000. Section 56 contains no provision for net operating loss carrybacks, as opposed to carryovers, in computing the minimum tax.

It is possible, therefore, for line 11 on Form 4625 to contain an entry of a net operating loss carryover even though the net operating loss incurred for that year was carried back 3 years and only the unused portion of it remained as a carryover to subsequent years. By no stretch of the imagination does it indicate a taxpayer's intent to forego the carryback period with respect to his net operating loss for that year. The entry of the loss carryover on petitioners' Form 4625, therefore, is not the election under section 172(b)(3)(E) required by the temporary regulations.

Having found no literal compliance with the regulations, we turn to petitioners' alternative contention that they have substantially complied with the election requirements. We acknowledge that this Court has recognized that literal compliance with all provisions of a regulation prescribing the manner for making an election is not always necessary when the taxpayer has complied with all of the essential requirements of the regulation. *Hoffman v. Commissioner*, 47 T.C. 218, 236–237 (1966), affd. per curiam 391 F.2d 930 (5th Cir. 1968); *Sperapani v. Commissioner*, 42 T.C. 308, 336–337 (1964). In deciding whether literal compliance is necessary for a valid election, the courts have looked to see whether the specific requirements related to the "essence" of the statutory and regulatory scheme. *Tipps v. Commissioner*, 74 T.C. 458, 468 (1980). In *Valdes v. Commissioner*, 60 T.C. 910, 913 (1973), the Court listed certain factors to be considered:

In ascertaining whether a particular provision of a regulation stating how an election is to be made must be literally complied with, it is necessary to examine its purpose, its relationship to other provisions, the terms of the underlying statute, and the consequences of failing to comply with the provision in question * * *

We conclude that the doctrine of substantial compliance is inapplicable to the instant matter. To be in substantial compliance with the election requirements under section 172(b)(3)(E), we think, as an absolute minimum, the taxpayer must exhibit in some manner, within the time prescribed by the statute, his unequivocal agreement to accept both the benefits and burdens of the tax treatment afforded by that section. See *Valdes v. Commissioner, supra* at 914. An intelligent election under section 172(b)(3)(E) requires a taxpayer to compare the tax benefits of the carryback and carryover provisions versus the possible tax benefits of the carryover election in years which have not yet come to pass. The section places the responsibility for making that comparison on the taxpayer and does not permit him to "wait and see." The election must be made on a timely return for the loss year and, once made, is "irrevocable for that year." As in the case of certain other elections, the policy of the section "is furthered by requiring a clear manifestation to the government of taxpayer's election"; any other rule "would leave room for the taxpayer to argue later that * * * [he] had never intended to make an election." *Knight-Ridder Newspapers, Inc. v. United States*, 743 F.2d 781 (11th Cir. 1984).

An examination of petitioners' original 1976 return, which reports no taxable income, and reports, for purposes of the computation of minimum tax, a net operating loss carryover from 1976 to 1977, reveals only ambiguous intentions at best; it does not reflect petitioner's unequivocal agreement to elect and comply with the terms of section 172(b)(3)(E). It leaves much room for argument, contrary to the scheme of the section. If the tables were turned, respondent would be hard pressed to show that petitioners were committed to the election and its statutory consequences.

Petitioners' arguments with respect to the substantial compliance issue are without merit. First, they contend that they consistently intended only to carry over their 1976 net operating loss and forego its carryback. In support of this contention, petitioners' accountant testified at trial that, based on his calculations, he decided that petitioners' 1975 net operating loss was sufficient to offset the income of prior years, and, therefore, that their 1976 net operating loss would benefit petitioners only if carried forward. Thus, when he completed

line 11 of Form 4625 on petitioners' original 1976 return, it was his intention, as confirmed by petitioners, to forego the carryback period of the 1976 net operating loss. Further, he stated that petitioners never filed anything with respondent which would have conveyed any other intent but to forego the carryback period. Petitioners introduced the accountant's workpapers at trial to corroborate his testimony that only a carryforward of the 1976 net operating loss was intended and that a carryback was never considered.

Even were we to accept both the accountant's testimony in full and his workpapers at face value, neither the accountant's state of mind, nor his workpapers were ever available to, or known by, respondent.[8] The only document available to respondent was the original 1976 return which in no way makes clear the existence of, the amount of, or petitioners' intentions with respect to their 1976 operating loss.

Second, petitioners claim that their amended return for 1976, filed in 1980, onto which they attached the required election statement, is evidence of their intention to carry such loss forward and indicative of their substantial compliance with the election requirements. The amended return does not aid petitioners' cause. Section 172(b)(3)(E) explicitly provides that the election must be made by the due date of the return for the year of the net operating loss for which the election is to be in effect. The due date (as extended) of petitioners' 1976 return was October 17, 1977. Petitioners' amended return for 1976 was not received by respondent until December 2, 1980, over 3 years after the due date of the return. In view of the

---

[8]We have reason to question the accountant's testimony. Although he testified that he determined that petitioners' 1975 net operating loss was sufficient to absorb their income from prior years, there is nothing in the record to suggest that the 1975 net operating loss was initially carried back; rather, as indicated in our findings of fact, it was carried forward to 1977 in petitioners' original 1977 return. Only after audit, when petitioners filed an amended return for 1977 did they acknowledge that the 1975 net operating loss must first be carried back to 1972, 1973, and 1974.

We think it quite likely that petitioners' accountant was either unaware of, or not completely familiar with, the net operating loss procedures for nonbusiness taxpayers in general and with the special election provision in particular. He testified that he made various mistakes concerning the computation of petitioners' net operating losses. Further, he admitted that, as of the time he filed petitioners' return for 1976 on Oct. 17, 1977, its due date, he had not yet had time to read Temporary Regs. sec. 7.0 which had been published in the Federal Register on Jan. 7, 1977, and in the Internal Revenue Bulletin on Feb. 14, 1977. From petitioner's standpoint, the accountant's failure to inform himself of the changes in the law may be unfortunate, but the temporary regulations were published 8 months before the 1976 return was filed. There was plenty of time for him to do so.

clear statutory mandate requiring the election under section 172(b)(3)(E) to be made by the due date of the return for the loss year, petitioners' amended return is irrelevant to a determination of substantial compliance.[9] Cf. *J.E. Riley Investment Co. v. Commissioner*, 311 U.S. 55 (1940).

Finally, petitioners contend that respondent has "in no way been harmed, damaged, prejudiced, or taken unfair advantage of by petitioners' manner of electing to relinquish the carryback of their 1976 net operating loss." We disagree. First, petitioners err in characterizing the scant information provided on their original 1976 return as a "manner of electing" the relinquishment of the carryback period. More important, however, petitioners filed nothing within the statutorily prescribed time which would have alerted respondent to the tax treatment sought. Relinquishment of the carryback period of petitioners' 1976 net operating loss is not something which could be gleaned by respondent by examining the face of the 1976 return, because a 1976 net operating loss may well have had no tax consequences in that year. The consequences of a net operating loss sustained in one year are often only manifest on returns of prior and future years. For this reason, respondent must be notified in some way concerning a taxpayer's intentions in order to facilitate respondent's duty to ensure compliance with the tax law.[10] *Knight-Ridder Newspapers, Inc. v. United States, supra* at 795–797. Petitioners' return provides no such notification.

The relinquishment of a net operating loss carryback, moreover, affects many other tax years and the operation of other statutory provisions. See secs. 56, 6501(h), 6511(d)(2). Were we to adopt petitioners' argument, we would be placing the Commissioner at a tremendous disadvantage; he would have the onerous administrative burden of gathering petitioners' returns for as many as 11 years and making detailed computations in order to decide from those returns whether an election was made. We think that in providing that a carryback period may be relinquished only by an election made in

---

[9]Petitioners argue that Temporary Regs. sec. 7.0(d) provides that an election made thereunder may be made in an amended return. This is true; however, in order to square the regulation with the directive of the statute, an election made in a subsequently filed return can only be effective if the subsequently filed return is filed before the due date of the return.

[10]See *Caulkins v. Commissioner*, T.C. Memo. 1984–504.

accordance with regulations and by prescribing that such an election, irrevocable for the taxpayer, must be made within specified time limits, Congress intended that the Commissioner not be so burdened.[11]

To reflect the foregoing,

*Decision will be entered for the respondent.*

---

[11]In disallowing a carryforward of petitioners' entire 1976 net operating loss, we note that respondent has not deprived petitioners of its tax benefit. The notice of deficiency makes clear that in calculating the deficiency for 1977, the year at issue, respondent carried petitioners' 1975 and 1976 net operating losses back to 1972, 1973, 1974, and 1975, and carried the unused portion of petitioners' 1976 net operating loss forward to 1977 under the general rules of sec. 172(b)(1) and (2). The respective 1975 and 1976 net operating losses of $188,590 and $223,964 were absorbed by taxable income for the appropriate carryback and carryforward years as follows:

|  | 1972 | 1973 | 1974 |
|---|---|---|---|
| Taxable income | $42,330 | $90,663 | $182,682 |
| Available net operating loss deduction | [1]188,590 | [2]370,224 | 279,561 |
| Unused net operating loss deduction | 146,260 | 279,561 | [3]96,879 |

|  | 1975 | 1976 | 1977 |
|---|---|---|---|
| Taxable income | 0 | 0 | $575,301 |
| Available net operating loss deduction | $96,897 | $96,897 | 96,897 |
| Unused net operating loss deduction | 96,897 | 96,897 | 0 |

[1]Carryback from 1975 only............................................................ $188,590
[2]Unused carryback from 1975 ........................................................ 146,260
　Carryback from 1976 ................................................................. 223,964
　　　　　　　　　　　　　　　　　　　　　　　　　　　　$370,224

[3]Unused carryback from 1975 ........................................................ 0
　Unused carryback from 1976........................................................ 96,897
　　　　　　　　　　　　　　　　　　　　　　　　　　　　96,897