M. LANE POWERS, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Powers v. Commissioner
Docket Nos. 7766-81, 719-82.
United States Tax Court
T.C. Memo 1986-494; 1986 Tax Ct. Memo LEXIS 122; 52 T.C.M. (CCH) 710; T.C.M. (RIA) 86494; September 29, 1986. Robert I. White, for the petitioner. David W. Johnson, for the respondent. CLAPP
MEMORANDUM OPINION CLAPP, Judge: These consolidated cases are before the Court on Cross-Motions for Partial Summary Judgment pursuant to Rule 121. [1] The issue raised in both motions is whether petitioner, as a matter of law, made an irrevocable election pursuant to section 172(b)(3)(C) to carry forward rather than carry back his 1978 and 1979 net operating losses. Respondent determined the following deficiencies in and additions to petitioner's Federal income tax: Additions to Tax
Docket No.
Year
Deficiency
Sec. 6653(a)
7766-81
1976
$370,461.78
719-82
1977
74,895.31
$3,744.76
*124 Petitioner by his petitions disputes the amount of the deficiencies and the imposition of the negligence addition. Subsequently, petitioner filed amended petitions arguing, in the alternative, that there are no deficiencies attributable to taxable calendar years 1976 or 1977 as a result of a carryback of a net operating loss from taxable year 1978. Respondent filed motions for partial summary judgment in each docketed case, maintaining that a net operating loss carryback is not available for taxable calendar years 1976 or 1977 as petitioner made an irrevocable election to carry forward this loss under section 172(b)(3)(C). Subsequent to the filing of these motions, these proceedings were stayed as a result of petitioner's filing a Chapter 11 petition under the bankruptcy laws. This stay was modified by the U.S. Bankruptcy Court to allow these cases to proceed in the Tax Court. Petitioner then filed a second amended petition in each case claiming that *125 a net operating loss sustained in 1979 is available for carryback to the years 1976 and 1977 resulting in overpayments for the years in issue. Petitioner then filed cross-motions for partial summary judgment maintaining that petitioner as a matter of law is entitled to claim a net operating loss carryback from the taxable years 1978 and 1979. By stipulation, the parties agreed that the Court's opinion with respect to respondent's motion and petitioner's cross-motion for partial summary judgment concerning 1978 will also apply to 1979. Petitioner timely filed an individual income tax return for 1978 on October 15, 1979, which reported on line 34 a negative taxable income of $1,054,355. Attached to the return is a Form 4625 Captioned "Computation of Minimum Tax -- Individuals." Line 11 on the form appears as follows: 11.
Enter any 1978 net operating loss
carryover to 1979 (attach statement
showing computation) See Schedule 4
958,823
Schedule 4 attached to the return is a separate sheet of paper prepared by petitioner and states the following: 1978
COMPUTATION OF NET OPERATION LOSS PURSUANT TO SECTION 56(d)
1) Statutory loss for the year 1978 per return
(taxable income)
$1,054,355
2) Less adjustments: (a) Net operating loss claimed
(b) Net Capital loss deduction claimed
(c) 50 percent capital gain deduction
allowed
94,782
(d) Deduction allowed for exemptions
750
(e) Non-business deduction in excess
of non-business income: Non-business deduction (excluding
casualty loss and loss form sale of
business) - Schedules A & E
388,985
Less: Non-business income (include
capital gains at 100 percent)
Dividends, Interest, Capital Gains
428,415
Excess, if any
3) Total adjustments in loss year
95,532
4) Net Operating loss deduction to year
1979 (1 less 3)
$ 958,823
*126 Schedule 5 is also a separate sheet prepared by petitioner and states the following: ELECTION STATEMENTS: 1.) Pursuant to Section 56(b)(3)(C), Taxpayer elects to carryforward to 1979 the net operating loss of 1978. 2.) Pursuant to Section 266, Taxpayer elects to capitalize interest on the unimproved and unproductive real property listed on Schedule 6. Petitioner's return for 1979 did not have a Form 4625, but it contained a Schedule 4 and Schedule 5 similar to those shown above. Without an election under section 172(b)(3)(C), petitioner is required to carry back the net operating loss incurred in 1978 to the years 1975, 1976 and 1977 prior to any carryover to subsequent years. On petitioner's 1975 amended return dated February 2, 1977, petitioner reported a negative taxable income of $11,323.23. Petitioner's return for 1976 reported a negative taxable income of $4,531.35. On the 1977 return, petitioner reported a taxable income of $10,720.19. In notices of deficiency issued to petitioner, respondent determined petitioner's taxable income for 1976 was $606,561.01 and for 1977 that it was $168,211.12. Respondent maintains that petitioner made an irrevocable election *127 in his 1978 return to carry forward any net operating loss incurred in 1978. Petitioner, on the other hand, argues that he is entitled to claim a net operating loss carryback. Petitioner makes three arguments: 1) petitioer did not intend to make an election to relinquish the net operating loss carryback; 2) the documents themselves do not constitute a valid election under section 172(b)(3)(C); and 3) even if petitioner intended and did make a valid election, he did so relying on a mistake of fact that vitiates such election. In support of his motion, counsel for petitioner attached affidavits from petitioner and petitioner's accountant to the effect that they did not intend to elect to relinquish the net operating loss carryback; that the accountant had advised against such an election; and that the schedules attached to the return were intended to relate to the carrying forward of the 1978 and 1979 net operating losses only for minimum tax purposes. A decision will be rendered on a motion for summary judgment if the pleadings, answers to interrogatories, depositions, admissions, and any *128 other acceptable materials, together with affidavits show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. See Rule 121(b). Partial summary judgment may be granted if the motion does not dispose of all the issues in the case. See Rules 121(b) and (c). Pursuant to section 172(b)(3)(C), a taxpayer may elect to relinquish the carryback period provided for in section 172(b)(1)(A). The election must be made by the due date of the return for the year of the loss, including extensions, and once made, the election is irrevocable. The form of the election under section 172(b)(3)(C) shall be in a manner prescribed by the Secretary. The Secretary has promulgated temporary regulations prescribing the procedure for making elections under various provisions of the Tax Reform Act of 1976 including, among others, the election under section 172(b)(3)(C). See Temporary Regs., Section 7.0; 42 Fed. Reg. 1469 (1977); 1977-1 C.B. 587. Section 7.0(d) of these regulations provides as follows: (d) Manner of making *129 election. Unless otherwise provided in the return or in a form accompanying a return for the taxable year, the elections * * * shall be made by a statement attached to the return (or amended return) for the taxable year. The statement required when making an election pursuant to this section shall indicate the section under which the election is being made and shall set forth information to identify the election, the period for which it applies, and the taxpayer's basis or entitlement for making the election. We believe that the statements made on the tax returns for the year 1978 and 1979 constitute valid, irrevocable elections under the statute. Although the schedules attached to the returns miscite the code section under which the elections are being made, all other requirements referred to in the above regulation are met. The schedules supply sufficient information necessary to identify the election as a net operating loss carryforward. In addition, the period for which the election applies is identified and the schedules, particularly schedule 4, identifies the basis for petitioner's entitlement to the election. The Schedule 4 refers to a "Computation of a Net Operating *130 Loss Pursuant to Section 56(d)." Section 56(d) in effect at that time related to a special computation of minimum tax liability for timber. However, the adjustments made on Schedule 4, Item 2, track exactly the adjustments called for under section 172(d). On Schedule 5, petitioner specifically refers to an election and that he elects to carry forward a net operating loss pursuant to section 56(b)(3)(C). No such section exists. However, section 172(b)(3)(C) does contain the election provision. Section 56(b) provides the following: (b) Deferral of Tax Liability In Case of Certain Net Operating Losses. -- (1) In general. -- If for any taxable year a person -- (A) has a net operating loss any portion of which (under section 172) remains as a net operating loss carryover to a succeeding taxable year, and (B) has items of tax preference in excess of $10,000, then an amount equal to the lesser of the tax imposed by subsection (a) or 15 percent of the amount of the net operating loss carryover described in subparagraph (A) shall be treated as tax liability not imposed for the taxable year, but as imposed for the succeeding taxable year or years pursuant to paragraph (2). *131 (2) Year of liability. -- In any taxable year in which any portion of the net operating loss carryover attributable to the excess described in paragraph (1)(B) reduces taxable income, the amount of tax liability described in paragraph (1) shall be treated as tax liability imposed in such taxable year in an amount equal to 15 percent of such reduction. (3) Priority of application. For purposes of paragraph (2), if any portion of the net operating loss carryover described in paragraph (1)(A) is not attributable to the excess described in paragraph (1)(B), such portion shall be considered as being applied in reducing taxable income before such other portion. No election is referred to under section 56. This section, when referring to a net operating loss, specifically refers to section 172.If petitioner had used the proper section cites, there would be no question that petitioner had made a valid election.It is clear that in citing the correct subsections, petitioner was in fact referring to section 172. We believe that the case of Young v. Commissioner,83 T.C. 831 (1984), affd. 783 F.2d 1201 (5th Cir. 1986), is factually distinguishable *132 from the present case. In Young, the taxpayers argued that they had made a valid election under section 172(b)(3)(E) [now section 172(b)(3)(C)] because they had inserted on Line 11 of the Form 4625 an amount of $131,334.89. No other statments or other information concerning the taxpayer's net operating loss was provided. This Court concluded that the taxpayer had neither literally nor substantially complied with the election requirements of the regulations. We found that the information contained on the taxpayer's return revealed only ambiguous intentions at best and that it did not reflect the taxpayer's unequivocal agreement to elect the provisions of section 172(b)(3)(C): That petitioners reported no taxable income for 1976 indicates nothing concerning either the existence or the extent of a net operating loss for that year, or any intention to carry the net operating loss forward or backward. Further, the mere fact that line 11 on Form 4625 contains an entry indicating a net operating loss carryover of $131,334.89 from 1976 to 1977 also indicates nothing with respect to the amount of a 1976 net operating loss, or petitioner's intent to relinquish the carryback period *133 for such loss. [83 T.C. at 837; fn. ref. omitted.] Here, however, we do have information relating to the net operating loss for 1978 and how that net operating loss carryover was computed. More importantly, we have a specific affirmative statement by petitioner to elect the net operating loss carryforward. Counsel for petitioner has submitted affidavits from petitioner and his accountant to the effect that there was no intention to elect to relinquish the net operating loss carryback period of three years. The accountant states that he was aware of the pending audit of the prior returns and, therefore, wanted to keep the carryback available, if needed, to offset items of income raised by the Internal Revenue Service. The accountant states that it was his intention that the Schedule 4 and 5 material all relate to the carrying forward of the net operating loss for minimum tax purposes. We note that there is no statutory provision allowing a separate net operating loss computation for minimum tax purposes alone. This language is especially puzzling with respect to the 1979 return since no minimum tax computation was made nor was any Form 4625 attached to *134 the return. Respondent cogently points out that petitioner would have benefited from electing to carry forward the 1978 and 1979 net operating losses based on the amounts reported on the prior returns. However, because the documents clearly manifest to the Commissioner that an election was made, we believe that petitioner's evidence of intent in signing those documents is immaterial. As the Fifth Circuit stated in affirming Young v. Commissioner,supra at 1206, "nineteen bishops swearing as to taxpayers' subjective intent would not carry this argument [regarding intent], because it contends for an inrrelevant fact. The Commissioner did not have access to the taxpayers' workpapers and was not otherwise informed of their state of mind." No other conclusion could be made by a reasonable person from the statements submitted by petitioner other than that an election had been made to carry forward the net operating loss. Petitioner also claims that even if he had intended to make and did in fact make a valid election, he made such an election relying on a mistake of fact and therefore the election should be void. Petitioner relies on Meyer's Estate v. Commissioner,200 F.2d 592 (5th Cir. 1952), *135 where shareholders were permitted to revoke an election to treat a liquidation under section 333 because they had relied upon a mistake of fact in making the election. Here the "facts" petitioner alleges that he and his accountant relied on are the net losses and the taxable income which had been reported on the prior years'b returns. After the 1978 and 1979 returns were filed, respondent determined that the correct taxable income was higher than the returns reported. The factual errors petitioner recites relate to the correctness of the items reported on the returns; for example, whether certain deductions should have been claimed, whether an abandonment rather than a sale of property should have been claimed. The items referred to by petitioner do not constitute mistakes of fact, but rather are based upon misapplication of tax law. In Bankers and Farmers Life Insurance Co. v. United States,643 F.2d 234 (5th Cir. 1981), an accountant for a life insurance company made an election to recognize gain under section 815(d)(1) by shifting funds from the policyholder's surplus account to the shareholder's surplus account in order to take advantage of net operating loss *136 carryovers. The accountant had overstated the amount of the net operating losses available for carryover due to expensing rather than amortizing costs associated with contracts and was under the mistaken belief that the net operating loss carryovers could be used to offset the type of income he had elected to recognize. The Fifth Circuit in this case distinguished Meyer's Estate on the basis that the accountant's errors were misapprehensions of the tax law. The court stated "good faith reliance on a mistaken legal judgment about the tax consequence of an improvident election does not entitle the taxpayer to revoke the election." 643 F.2d at 238. Petitioner is asking us to allow him to revoke an election because he subsequently discovered as a result of the Commissioner's audit that he made mistakes regarding the proper tax treatment of items on the prior returns and now realizes that he can benefit from a net operating loss carryback. If a taxpayer is permitted to revoke an election under section 172(b)(3)(C), under these circumstances, the irrevocability of the election *137 is called into question. Petitioner would be allowed to wait and see whether his election is profitable, which is what the statute does not permit by requiring an irrevocable election to be filed as of the due date of the return when the net operating loss is incurred. See Valdes v. Commissioner,60 T.C. 910, 915 (1973). Based on the foregoing, we grant respondent's motion for partial summary judgment and deny petitioner's cross-motion for partial summary judgment. Appropriate orders will be issued.
Footnotes
1. Unless otherwise indicated, all Rule references are to the Tax Court Rules of Practice and Procedure and all section references are to the Internal Revenue Code of 1954 as amended, and in effect during the years at issue.↩