MITCHELL MENAGED, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Menaged v. Commissioner
Docket No. 5649-86
United States Tax Court
T.C. Memo 1991-79; 1991 Tax Ct. Memo LEXIS 101; 61 T.C.M. (CCH) 1995; T.C.M. (RIA) 91079; February 28, 1991, Filed *101 Decision will be entered under Rule 155. George Mac Vogelei, for the petitioner. Debra A. Bowe, for the respondent. COHEN, Judge. COHEN
MEMORANDUM OPINION Respondent determined a deficiency of $ 22,855.59 in petitioner's Federal income tax for 1981 and additions to tax under section 6653(a)(1) and (2). Respondent has conceded that petitioner is not liable for the additions to tax under section 6653(a)(1) and (2). Respondent has also conceded that petitioner is entitled to carry back an investment tax credit to the taxable year ended December 31, 1981. Unless otherwise indicated, all section references are to the Internal Revenue Code as amended and in effect for the year in issue. After concessions, the issue remaining for decision is whether petitioner made an effective election under section 172(b)(3)(C) to relinquish the entire carryback period with respect to a net operating loss that petitioner sustained in the taxable year ended December 31, 1979. If petitioner did not make an effective election, we must determine whether any amount of the net operating loss that petitioner sustained in 1979 was available to carry forward to the taxable year ended December *102 31, 1981. All of the facts have been stipulated. The stipulated facts are incorporated as our findings by this reference. Background
Petitioner resided in San Francisco, California, at the time he filed the petition in this case. On November 16, 1979, petitioner realized a gain of $ 51,009 from the sale of his personal residence. Petitioner purchased a new residence on November 20, 1979, at a cost of $ 225,000. On April 15, 1989, petitioner timely filed his 1979 Federal income tax return (1979 return). On that return, petitioner reported the $ 51,009 realized gain from the sale of his personal residence as a long-term capital gain; as a result, petitioner had a net capital gain of $ 50,852 and reported capital gain income of $ 20,341. Petitioner also reported a Schedule C loss of $ 54,961, although the actual amount of that loss was $ 52,780. Finally, petitioner reported adjusted gross income (loss) of ($ 17,043) and no taxable income. No statement was attached to petitioner's 1979 return indicating an election under section 172(b)(3)(C) to relinquish the carryback period with respect to a net operating loss. On his 1980 Federal income tax return (1980 return), petitioner *103 reported adjusted gross income of $ 14,563 and taxable income of $ 3,018. On July 26, 1982, respondent's Fresno, California, service center received the following returns from petitioner: 1979 amended Federal income tax return (1979 amended return), 1980 amended Federal income tax return (1980 amended return), and 1981 Federal income tax return (1981 return). All three of these returns were signed by the preparer and by petitioner on July 14, 1982. On his 1979 amended return, petitioner reported that the 1979 sale of his personal residence qualified for nonrecognition treatment under section 1034. Petitioner therefore reported adjusted gross income (loss) of ($ 37,541) and taxable income (loss) of ($ 48,275). Petitioner also attached to the 1979 amended return a schedule with the heading "Net Operating Loss Computation." On that schedule, petitioner computed a net operating loss of $ 40,931; the parties agree, however, that petitioner's actual 1979 net operating loss was $ 38,670. Petitioner placed the following handwritten statement on the bottom of that schedule: "Taxpayer hereby elects to carryover the unused net operating loss generated in 1979 to 1980 and subsequent years." *104 Petitioner attached similar computational schedules to his 1980 amended return and to his 1981 return. After carryover to the taxable year ended December 31, 1980, as reflected in his 1980 return, petitioner computed and reported the remainder of the net operating loss carryover, $ 40,213, as "other income" on line 20 of his 1981 return. In his notice of deficiency for the taxable year ended December 31, 1981, respondent disallowed the entire net operating loss deduction claimed by petitioner for that year. Respondent's explanation for the disallowance was that petitioner "did not elect to forego the carryback period on a loss year return filed on time." Discussion
In general, section 172 allows a deduction for an amount equal to the aggregate of the net operating loss carryover to a taxable year plus the net operating loss carryback to that year. Sec. 172(a). Section 172(b), as in effect for the year in issue, required that a net operating loss first be carried back to each of the 3 previous taxable years and, if unabsorbed by those years, that the remaining portion be carried forward to the 7 following taxable years. Sec. 172(b)(1) and (2). Section 172(b)(3)(C), however, *105 provides that a taxpayer may elect to relinquish the entire carryback period and carry forward the loss to the taxable years following the loss year. That section further provides that: (C) * * * Such election shall be made in such manner as may be prescribed by the Secretary, and shall be made by the due date (including extensions of time) for filing the taxpayer's return for the taxable year of the net operating loss for which the election is to be in effect. Such election, once made for any taxable year, shall be irrevocable for that taxable year.
The regulations, in accord with the statute, provide that the "election must be made by the later of the time, including extensions thereof, prescribed by law for filing income tax returns for such taxable year." Sec. 7.0(b)(1), Temporary Income Tax Regs., 42 Fed. Reg. 1469 (Jan. 7, 1977), which regulation is entitled "Various Elections Under the Tax Reform Act of 1976." As to the manner that the election is to be effected, section 7.0(d), Temporary Income Tax Regs., 42 Fed. Reg. 1470 (Jan. 7, 1977), provides: (d) Manner of making election. Unless otherwise provided in the return or in *106 a form accompanying a return for the taxable year, the elections described * * * shall be made by a statement attached to the return (or amended return) for the taxable year. The statement required when making an election pursuant to this section shall indicate the section under which the election is being made and shall set forth information to identify the election, the period for which it applies, and the taxpayer's basis or entitlement for making the election.
The primary issue for decision in this case is whether petitioner complied with the statutory and regulatory requirements set forth above and, therefore, is entitled to carry forward the 1979 net operating loss to the year in issue. We have previously analyzed these requirements in Young v. Commissioner, 83 T.C. 831 (1984), affd. 783 F.2d 1201 (5th Cir. 1986). In Young, the taxpayers sustained a net operating loss in 1976. On their 1976 Federal income tax return, the taxpayers reported their taxable income as "None." On a Form 4625, Computation of Minimum Tax, attached to that return, the taxpayers entered on line 11 the amount of their 1976 loss as a net operating loss. That *107 return contained no other information concerning the taxpayers' 1976 net operating loss or net operating losses from other years. 83 T.C. at 832. On December 2, 1980, respondent received from the taxpayers an amended Federal income tax return for 1976; the taxpayers attached a statement thereto entitled "Net Operating Loss Computation." That statement contained a recalculation of the taxpayers' 1976 net operating loss and the following declaration: ELECTION In accordance with regulation section 7.0(d) taxpayer elects or has previously elected to forego the carryback period of the 1976 net operating loss deduction. [Young v. Commissioner, 83 T.C. at 833.]
This Court concluded that the taxpayers neither literally nor substantially complied with the election requirements of the regulations at section 7.0(d), Temporary Income Tax Regs.83 T.C. 831 at 836. In Young, we held that, under the regulations, a taxpayer is required to attach a "separate statement" with the requisite information to the return itself, and the taxpayers' lack of taxable income for the return year did not constitute such a separate statement. In *108 this regard, we stated: That petitioners reported no taxable income for 1976 indicates nothing concerning either the existence or the extent of a net operating loss for that year, or any intention to carry the net operating loss forward or backward. * * * [Fn. ref. omitted; Young v. Commissioner, 83 T.C. at 837.]
Further, the taxpayers' entry on the Form 4625 attached to the 1976 return "indicate[d] nothing with respect to the amount of a 1976 net operating loss, or [the taxpayers'] intent to relinquish the carryback period for such loss." 83 T.C. at 837. Similarly, in this case petitioner failed to comply with the express terms of the regulations. Petitioner did not attach a separate statement to his 1979 return to indicate that he was making the election under section 172(b)(3)(C). Further, petitioner's lack of taxable income on his 1979 return does not indicate the existence of a net operating loss or petitioner's intent to carry such loss forward or backward. Finally, petitioner's reported Schedule C loss on his 1979 return indicates nothing with respect to the existence or amount of a net operating loss or petitioner's intent *109 to relinquish the carryback period for such loss. Petitioner has also failed to comply substantially with the terms of the regulations. As we stated in Young v. Commissioner, supra: [A]s an absolute minimum, the taxpayer must exhibit in some manner, within the time prescribed by the statute, his unequivocal agreement to accept both the benefits and burdens of the tax treatment afforded by that section. * * * [83 T.C. at 839.]
This was based, in part, on our conclusion that an election under section 172(b)(3)(C) places the responsibility on the taxpayer to compare the benefits of such an election "in years which have not yet come to pass" and "does not permit him to 'wait and see;'" rather, the election must be made on a timely return for the loss year and, once made, is "irrevocable for that year." 83 T.C. at 839. In this case, the 1979 return and the Schedule C simply do not comport with the purpose of section 172(b)(3)(C), which requires "a clear manifestation to the government of [the] taxpayer's election" so that the taxpayer is precluded from later arguing that such election was never intended. 83 T.C. at 839. These documents do not make clear the existence of, the amount of, or petitioner's intentions with respect to a net operating loss. *110 Petitioner also contends that he had no actual net operating loss at the time that he filed his original 1979 return and thus could not have made the required election under section 172(b)(3)(C). Petitioner's argument is without merit. Petitioner realized gain from the sale of his personal residence on November 16, 1979, and purchased a new residence on November 20, 1979. Petitioner reported the gain as capital gain, although the gain qualified for nonrecognition treatment under section 1034. The events that petitioner relied upon as a basis for computing and reporting a net operating loss on his 1979 amended return occurred prior to the time that petitioner filed his original 1979 return. Petitioner therefore could have made the required election at the time that he filed his original 1979 return. Furthermore, we cannot attach any significance to the election statement contained on petitioner's 1979 amended return. In rejecting an identical contention of the taxpayer in Young v. Commissioner, supra, we concluded that the taxpayer's *111 "amended return is irrelevant" in determining substantial compliance with the election requirements. 83 T.C. at 840-841. In rejecting the taxpayer's argument that section 7.0(d), Temporary Income Tax Regs., provides that an election may be made in an amended return, we explained: This is true; however, in order to square the regulation with the directive of the statute, an election made in a subsequently filed return can only be effective if the subsequently filed return is filed before the due date of the return. [Young v. Commissioner, 83 T.C. at 841 n.9.]
In this case, petitioner's 1979 amended return was filed more than 2 years after the due date of the original return. Under these circumstances, we cannot conclude that petitioner's statement on his amended return filed more than 2 years after the due date of the return was a sufficient election under section 173(b)(3)(C). Such a conclusion is contrary to the indispensable requirements of that section , set forth above, that compel a taxpayer to make an irrevocable election "within the time allowed for filing the return in the year of loss." Young v. Commissioner *112 , 783 F.2d 1201, 1206 (5th Cir. 1986), affg. 83 T.C. 831 (1984). Because we have concluded that petitioner did not make a valid election under section 172(b)(3)(C), we must determine the effect on petitioner's income for 1981, the year in issue. If the election is not made, section 172(b)(2) provides that a carryover is allowable only to the extent that the loss exceeds the taxable income for the years of a carryback, regardless of whether a carryback was in fact claimed. Lone Manor Farms, Inc. v. Commissioner, 61 T.C. 436, 441-442 (1974), affd. without published opinion 510 F.2d 970 (3d Cir. 1975); sec. 1.172-4(b)(1) and (2), Income Tax Regs. In this case, petitioner has not offered any evidence that the 1979 net operating loss would not have been absorbed through the operation of the 3-year carryback. He has thus failed to carry his burden of proof. See Rule 142(a), Tax Court Rules of Practice and Procedure. Respondent's disallowance of petitioner's claimed net operating loss carryover to 1981 must therefore be sustained. Due to concessions,
Decision will be entered under Rule 155 *113 .