MANSELL W. BRANUM, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Branum
Docket No. 18178-90
United States Tax Court
T.C. Memo 1993-8; 1993 Tax Ct. Memo LEXIS 9; 65 T.C.M. (CCH) 1715; January 11, 1993, Filed *9 Decision will be entered for respondent. For Petitioners: William P. Bowers and Carolyn M. Beckett. For Respondent: Martin M. Van Brauman. RAUM
RAUM
MEMORANDUM OPINION RAUM, Judge: The Commissioner determined a deficiency in petitioner's Federal income tax in the amount of $ 1,006,569 for the tax year 1982. A number of issues have been settled, and the only matter now in dispute is whether petitioner's election in his 1985 Form 1040 return to carry forward under section 172(b)(3)(C)[1] "all [1985] losses" and forgo the "carryback of such losses to prior years" precludes the carryback to 1982 of his 1985 alternative minimum tax net operating loss. In particular, we are asked to consider whether this election as to "all losses" is to be read restrictively as meaning only petitioner's regular net operating loss (to the exclusion of his alternative minimum tax net operating loss) by reason of certain language in an income averaging schedule attached to petitioner's separately filed Form 1045 Application for Tentative Refund. The facts have been stipulated. *10 Petitioner, an individual, was a legal resident of Midland, Texas, at the time he filed his petition. On petitioner's timely filed 1982 Federal income tax return, he reported a long-term capital gain of $ 38,973,324 from the sale of his stock interest in Midland Southwest Corporation. Because of the capital gain exclusion relating to this and other miscellaneous stock sales, petitioner reported alternative minimum taxable income of $ 37,191,049 in 1982, and paid alternative minimum tax (AMT) of $ 914,290 with the filing of his 1982 tax return. As a result of amendments to the 1982 return and carrybacks from 1983 and 1984, petitioner's AMT liability for tax year 1982 was substantially increased before the attempted carryback of the alternative tax net operating loss (AMT NOL) on petitioner's 1985 tax return. For the tax year 1985, petitioner's net operating loss determined under section 172 ("regular" NOL) was $ 5,003,451 and his AMT NOL was $ 4,943,544. Petitioner timely filed his 1985 Form 1040 tax return; it was mailed on June 27, 1986, and received by the Commissioner on July 1, 1986. [2] The following appears in Statement No. 1 attached to (and made part of) the return: *11 Taxpayer, in accordance with I.R.C. section 172(b)(3)(C) hereby elect [sic] to carry foreward [sic] all losses sustained in the calendar year 1985 and forego [sic] carry back of such losses to prior years.
Petitioner also mailed on June 27, 1986, an Application For Tentative Refund (Form 1045) for a loss carryback from 1985 to 1982, which was also received by the Commissioner on July 1, 1986. In the Form 1045 Application for Tentative Refund, petitioner sought a $ 972,708 refund of his 1982 income tax, based upon a recomputation of his 1982 alternative minimum tax to reflect a carryback of his 1985 AMT NOL to 1982. [3] Petitioner's Form 1045 was not attached to his Form 1040, but was mailed in a separate envelope. [4] Upon receipt by the Commissioner, it was promptly referred to an apparently separate unit of the IRS, as indicated by a notation stamped thereon *12 reading "Adjustment Support Unit July 3, 1986". No such notation appeared on the Form 1040 return. The $ 972,708 "tentative" refund sought in Form 1045 was thereafter made, and it was presumably made within the 90-day period required by section 6411(b). Thereafter, upon an audit of petitioner's 1985 return during the applicable 3-year period of limitations as extended by agreement, [5] the Commissioner in a statutory notice of deficiency dated May 14, 1990, disallowed the carryback of the 1985 AMT NOL to 1982. The deficiency notice stated: It is determined that you are not entitled to carryback the alternative minimum tax net operating loss from tax year 1985 to tax year 1982 since *13 the election you made to carry forward the net operating loss under Internal Revenue Code section 172(b)(3)(C) is irrevocable and applies to both the regular net operating loss as well as the carryback for alternative minimum tax purposes. Accordingly, the tentative overassessment allowance of $ 972,708.00 in tax year 1982 is due to be recovered.
We sustain the Commissioner's determination. The governing statutory provisions are found in section 172(b)(3)(C) [now section 172(b)(3)] [6] which provides: (C) Any taxpayer entitled to a carryback period under paragraph (1) may elect to relinquish the entire carryback period with respect to a net operating loss for any taxable year ending after December 31, 1975. Such election shall be made in such manner as may be prescribed by the *14 Secretary, and shall be made by the due date (including extensions of time) for filing the taxpayer's return for the taxable year of the net operating loss for which the election is to be in effect. Such election, once made for any taxable year, shall be irrevocable for that taxable year.
It is clear from these provisions (1) that the election must be made "in such manner as may be prescribed by the Secretary", (2) that the election must be made by the due date or extended due date for filing the return, and (3) that once made the election is irrevocable for the taxable year. The Secretary has promulgated regulations which prescribe the manner for making the election. Sec. 7.0(d), Temporary Income Tax Regs., 42 Fed. Reg. 1470 (Jan. 7, 1977), T.D. 7459, 1977-1 C.B. 587, 590 provides: (d) Manner of making election.Unless otherwise provided in the return or in a form accompanying a return for the taxable year, the elections described * * * shall be made by a statement attached to the return (or amended return) for the taxable year. The statement required when making an election pursuant to this section shall *15 indicate the section under which the election is being made and shall set forth information to identify the election, the period for which it applies, and the taxpayer's basis or entitlement for making the election.
These regulations have been treated as valid and binding. Young v. Commissioner, 83 T.C. 831, 835-838 (1984), affd. 783 F.2d 1201 (5th Cir. 1986); Carlstedt Associates, Inc. v. Commissioner, T.C. Memo. 1989-27 n.16. At the outset, we emphasize that the regular net operating loss deduction and the alternative tax net operating loss deduction are governed by a single carryback period to which only a single election made under section 172(b)(3)(C) may apply. We so held in Plumb v. Commissioner, 97 T.C. 632 (1991), and although we do not find it necessary here to restate the reasoning that led us to that *16 conclusion, the opinion in this case should be read together with the Plumb opinion. In our judgment, petitioner's election on his 1985 return "to carry forward all losses sustained in * * * 1985" and to relinquish the "carryback of such losses to prior years" is effective and irrevocable as required by section 172(b)(3)(C) and the applicable regulations. Moreover, it is effective and irrevocable as to both petitioner's regular NOL and his AMT NOL. Petitioner argues, however, that he never made any election applicable to both his regular net operating loss and his alternative minimum tax net operating loss. But, the clear language of his election is plainly to the contrary. He elected without any stated restriction to carry forward "all losses" and relinquished his right to carry back "such losses". The language of the election is sweeping and unambiguous. Petitioner nevertheless contends that he made a "split election", i.e., an election to carry forward only his regular NOL, relinquishing the carryback only of the regular NOL, while at the same time retaining the right to carry back his AMT NOL. His objective in making that contention is to bring himself within the *17 further holding in Plumb that a split election is ineffective, with the consequence that he is to be treated as having made no election at all and is therefore entitled, indeed required, to carry back both his regular NOL and his AMT NOL. On the facts before us we hold that Plumb is sharply distinguishable in this respect, and that it indeed strongly points in the opposite direction here. In Plumb the election was stated by the taxpayers as follows: "Taxpayers elect to forego [sic] the carryback period for the regular NOL in accordance with section 172(b)(3)(C) and will carry forward this NOL." 97 T.C. at 634. We placed particular emphasis on the fact that the word "regular" in the election was underscored by the taxpayers themselves. In holding that the taxpayers in Plumb did attempt to make a split election, applicable only to their regular NOL, we focused primarily upon their singling out the word "regular", which they emphasized by underscoring it. Nothing even remotely resembling the election in Plumb is present in the election made by petitioner. To the contrary, his unrestricted election was to carry forward "all losses" *18 and to relinquish the carryback of "such losses" to prior years. That election is sweeping and unambiguous. We hold that "all" means all. Petitioner seeks to get around this obvious conclusion by resort to a handwritten statement made by him in the bottom margin of an income averaging schedule (Schedule G) attached to his Form 1045 Application for Tentative Refund for 1982 based upon the attempted carryback of his AMT NOL from 1985. That handwritten statement reads: "Regular NOL not carried back per 172(b)(3)(C) election with 1985 return; AMT NOL carried back only." We note in the first place that this statement does not even purport to be an election. It merely undertakes to characterize an election made by petitioner on his Form 1040 income tax return, and it refers merely to a "172(b)(3)(C) election", coupled with the factual statement "AMT NOL carried back only". The latter statement was obviously intended to explain the basis for the "quickie refund" sought by petitioner in his Form 1045 -- a form that is completely separate and distinct from the taxpayer's Form 1040 income tax return and that was submitted to the Commissioner wholly separate and apart from the return itself. *19 It is important that the nature and scope of Form 1045 be clearly understood. It is based upon section 6411 relating, inter alia, to section 172 carrybacks. To the extent relevant here, section 6411 provides: [7]
SEC. 6411. TENTATIVE CARRYBACK AND REFUND ADJUSTMENTS. (a) Application for adjustment. -- A taxpayer may file an application for a tentative carryback adjustment of the tax for the prior taxable year affected by a net operating loss carryback provided in section 172(b), * * * (b) Allowance of Adjustments. -- Within a period of 90 days from the date on which an application for a tentative carryback adjustment is filed under subsection (a), * * * the Secretary shall make, to the extent he deems practicable in such period, a limited examination of the application, to discover omissions and errors of computation therein, and shall determine the amount of the decrease in the tax attributable to such carryback upon the basis of the application and the examination, except that the Secretary may disallow, without further action, any application which he finds contains errors of computation which he deems cannot be corrected by him within such 90-day period or material *20 omissions. * * * Any remainder shall, within such 90-day period, be * * * refunded to the taxpayer. [Emphasis supplied.]
The taxpayer's Form 1045 application for a carryback refund is appropriately captioned "Application for Tentative Refund". (Emphasis supplied.) The refund paid to the taxpayer after such summary examination is only tentative, since the Commissioner is free to reach a different conclusion upon a subsequent thorough examination in the audit of the 1040 return itself during the 3-year period of limitations or longer if extended. After such consideration the Commissioner may then determine that the refund was not warranted and may then issue a notice of deficiency as was done in this case. *21 As petitioner correctly points out, we noted in Plumb v. Commissioner, 97 T.C. at 641, that the taxpayers filed requests for tentative refunds (Forms 1045) which carried back only their AMT NOL's. Our reference to the 1045's was not the basis for our decision in that case; it was only to indicate that the 1045's there merely confirmed the conclusion that we had already reached as to the nature of the election made by the taxpayers. Here, on the other hand, we have concluded that the election stated unambiguously that petitioner had elected to carry forward all net operating losses, and to relinquish the carryback of such losses, without distinguishing between regular NOL's and AMT NOL's. We are quite aware from the stipulation of the parties that petitioner's intent was not to relinquish the carryback period of his 1985 AMT NOL to offset his 1982 tax liability, and that he would not have elected to forgo the carryback of his regular NOL if he had known that the election to carry forward his regular NOL from 1985 would be interpreted to require the carryforward of his AMT NOL. However, petitioner's subjective intent is irrelevant for purposes *22 of determining whether an election under section 172(b)(3)(C) has been made. The following oft-quoted remarks of the Fifth Circuit in Young v. Commissioner, 783 F.2d 1201, 1206 (5th Cir. 1986), affg. 83 T.C. 831 (1984), are particularly applicable here: But nineteen bishops swearing as to taxpayers' subjective intent would not carry this argument, because it contends for an irrelevant fact. * * *
See also Carlstedt Associates, Inc. v. Commissioner, T.C. Memo. 1989-27, 56 T.C.M. 1090, 1096 (1989); Powers v. Commissioner, T.C. Memo. 1986-494, 52 T.C.M. 710, 712 (1986); cf. Menaged v. Commissioner, T.C. Memo. 1991-79, 61 T.C.M. 1995 (1991). We note, moreover, that an AMT NOL can in any event be carried back under section 172 only to tax years beginning after December 31, 1982. See sec. 201 of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA), Pub.L. 97-248, 96 Stat. 324, 411. [8] The regular NOL alone may be carried back to be applied in computing a taxpayer's alternative *23 minimum tax for 1982 and prior years. Holden v. Commissioner, 98 T.C. 160 (1992). But petitioner here, to the extent that 1982 is involved, even under his version of the election made by him -- which we rejected above-opted to carry forward his 1985 regular NOL and forgo his right to carry it back. He has not claimed any right to carry back his 1985 regular NOL to 1982 to be used in the computation of his 1982 AMT. In any event, as we have concluded earlier herein, there was no split election as applied to this case. What we have here is merely an election to carry forward "all losses" of petitioner while at the same time relinquishing his right to carry them back, certainly to the taxable year 1982. We hold that petitioner made *24 an election in his 1985 return to carry forward "all" losses, that even if an AMT NOL could otherwise be carried back to 1982, it may not be carried back here in view of the election, and that petitioner's reliance upon Plumb is faulty since he did not make a split election here as was clearly attempted in Plumb. Finally, we note that even though our holding deprives petitioner of a carryback of his 1985 AMT NOL to 1982, there is still available to him the carryover right for the 15-year period after 1985 pursuant to section 172(b)(1)(B). Decision will be entered for respondent. Footnotes
1. Except as otherwise indicated, all section references are to the Internal Revenue Code of 1954 as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioner had filed an extension request (Form 4868) for his 1985 return on April 15, 1986, extending the due date for filing to August 15, 1986.↩
3. The recomputation involved the interplay of the revised items of income and deductions and the interplay of the resulting regular and alternative minimum taxes.↩
4. The top portion of the first page of Form 1045 contained the following printed instruction: "Do Not Attach to Your Income Tax Return - Mail in a Separate Envelope".↩
5. Although the 3-year period of limitations for the taxable year 1985 originally would have expired on July 1, 1989, the Commissioner obtained petitioner's consent to an extension of the period of limitations until June 30, 1990.↩
6. Sec. 172(b)(3)(C) was formerly designated sec. 172(b)(3)(E)↩.
7. Predecessor provisions of sec. 6411 first appeared in sec. 3780 of the 1939 Code, as added to the 1939 Code by sec. 4 of the Tax Adjustment Act of 1945, ch. 340. 59 Stat. 517, 519-521. In the report of the House Ways and Means Committee with respect to such provisions as originally presented it was stated (H. Rept. 849, 79 Cong., 1st Sess. at 24-25 (1945), 1945 C.B. 566, 582-583): Within such period of 90 days the Commissioner is to make such limited examination of the application as he deems practicable for omissions and errors of computation therein. * * * The Commissioner, however, may correct any errors of computation or omissions he may discover upon whatever limited examination he may make of the application. * * * * * * In recognition of the fact that, due to the short period of time allowed, the Commissioner necessarily will act upon an application for a tentative carry-back adjustment only after a very limited examination, subsection (c) of section 3780 provides a summary procedure↩ whereby the Commissioner and the taxpayer each may be restored to the same position occupied prior to the approval of such application. * * * [Emphasis supplied.]
8. Provision for AMT NOL carrybacks first appeared in the Code as a result of amendments thereto made by sec. 201 of TEFRA, and such amendments were explicitly made applicable by sec. 201(e) of TEFRA "to taxable years beginning after December 31, 1982."↩