T.C. Memo. 1999-198


UNITED STATES TAX COURT


LINDA KLYCE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 20651-93, 12686-97.        Filed June 17, 1999.


Linda Klyce, pro se.

<u>Allan D. Hill</u>, for respondent.


MEMORANDUM OPINION


COUVILLION, <u>Special Trial Judge</u>:  These consolidated cases were heard pursuant to section 7443A(b)(3)[1] and Rules 180, 181, and 182.

---

[1]    Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the years at issue.  All Rule references are to the Tax Court Rules of Practice and Procedure.

In notices of deficiency,[2] respondent determined the following deficiencies in petitioner's Federal income taxes, additions to tax, and penalties:

| | | Additions to Tax | | Penalties |
|---|---|---|---|---|
| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6654(a) | Sec. 6662(a) |
| 1988 | $3,132 | $783.00 | $200.08 | -- |
| 1989 | 529 | 132.25 | -- | -- |
| 1990 | 1,764 | 441.00 | 116.00 | -- |
| 1991 | 1,084 | 271.00 | -- | $217 |
| 1992 | 859 | 215.00 | -- | 172 |
| 1993 | 1,691 | -- | -- | 338 |

Most of the adjustments in the notices of deficiency have been settled by the parties. The settled issues and stipulated facts are set forth in a Stipulation of Facts, a Stipulation of Agreed Adjustments, a Second Stipulation of Agreed Adjustments, and a Supplemental Stipulation of Facts. These settled adjustments are not repeated here but are referred to, where pertinent, in connection with the consideration of a disputed issue. The disputed issues for decision are: (1) Whether petitioner is entitled, for her 1988, 1989, and 1990 tax years, to deductions for net operating loss carryforwards from her 1985, 1986, and 1987 tax years; (2) whether petitioner is entitled to deductions for trade or business expenses for the years 1990, 1991, 1992, and 1993 in amounts greater than amounts that were

---

[2] Respondent issued a separate notice of deficiency for each of the years 1988, 1989, and 1990 and one notice of deficiency for 1991, 1992, and 1993.

allowed by respondent; (3) whether, as respondent determined for the years 1992 and 1993 through an indirect method, petitioner received unreported gross income from two trade or business activities petitioner was engaged in; (4) whether an S corporation in which petitioner was a shareholder is entitled to an expense deduction under section 179 for the year 1993 in an amount greater than that allowed by respondent; (5) whether petitioner is entitled, for her 1988, 1989, and 1990 tax years, to deductions for net operating loss carrybacks from her 1991, 1992, and 1993 tax years; and (6) whether petitioner is liable for the additions to tax and penalties shown above.

The facts, as stipulated by the parties, along with the annexed exhibits, are so found and are incorporated herein by reference. At the time the petitions were filed, petitioner's legal residence was Oakland, California.

Petitioner had been employed by the U.S. Postal Service for several years. In the course of her employment, she sustained injuries that ultimately resulted in her retirement from the Postal Service on disability. Thereafter, petitioner became engaged in several business activities along with three of her sisters, Barbara J. Wilson, Faye W. Oatis, and Marian Wilson. These activities are briefly described as follows:

(1) Klyce Day Care. This was a child day care service that petitioner began in 1979. It was a general partnership

comprising petitioner, Barbara J. Wilson, and Marian Wilson, each owning a one-third interest.

(2) Special Occasions. This was also a general partnership organized in 1983 and consisting of petitioner, Marian Wilson, and Barbara J. Wilson, who each owned a 32-percent partnership interest, and Faye W. Oatis, who owned a 4-percent interest. Special Occasions specialized in custom tailoring, including designs, of clothing and accessories, such as wedding and party dresses, for what was described as "full-figured" women.

(3) Special O, Inc. This was an S corporation that was organized in 1990 by petitioner, Marian Wilson, and Barbara J. Wilson, who each owned one-third of the stock in the corporation (Special O). The other sister, Faye W. Oatis, had no interest in Special O. Marian Wilson was president of Special O, Barbara J. Wilson was vice president, and petitioner was secretary-treasurer. Special O was organized to conduct sales of the clothing prepared or manufactured by Special Occasions. In addition, Special O sold related merchandise. The activities of Special Occasions and Special O were conducted in the same rented building that was located in Oakland, California.

(4) Sweets 'N' Things. This was a sole proprietorship owned by petitioner, which was a catering activity. The only issue as to this activity is whether, for 1991 and 1992, petitioner is

entitled to larger expense deductions than the amounts allowed by respondent.

During the years at issue, Special Occasions and Special O shared the same bank account, titled in the name of Special Occasions. The partners of Special Occasions and the shareholders of Special O failed to keep accurate books and records of the income and expenses of the two entities. This problem was compounded by the fact that not only the entities used the same bank account but also that the books and records failed to properly track the deposits and expenditures of each separate entity.

Klyce Day Care did not file partnership information returns for the tax years 1987 through 1993. Special Occasions did not file partnership returns for the tax years 1987 through 1991 but filed returns for 1992 and 1993. Special O filed Forms 1120S, U.S. Income Tax Return for an S Corporation, for 1991, 1992, and 1993.

Petitioner did not file individual Federal income tax returns for 1988, 1989, and 1990. However, in the stipulations referenced earlier, petitioner and respondent agreed to petitioner's income and certain other related items for these years, leaving at issue only those items discussed hereafter. Petitioner's taxable income for these years, respectively, was

stipulated to be $24,240, $8,623, and $16,347 (before deduction of any net operating loss carryovers).

Petitioner filed her Federal income tax returns for 1991 and 1992 on October 1, 1993.  These returns were not timely filed. Petitioner timely filed her Federal income tax return for 1993. On her Federal income tax returns for 1991, 1992, and 1993, petitioner reported Schedule E losses in the following amounts from Special Occasions, Klyce Day Care, and Special O:

| Partnership/S Corp | 1991 | 1992 | 1993 |
|---|---|---|---|
| Special Occasions | ($ 1,967) | ($ 2,816) | ($ 2,689) |
| Klyce Day Care | ( 4,898) | ( 4,898) | ( 3,200) |
| Special O | ( 6,875) | ( 9,895) | ( 13,777) |
| Total losses | ($13,740) | ($17,609) | ($19,666) |

Petitioner reported no income or loss from Sweets 'N' Things for 1991, 1992, or 1993.

In August 1996, petitioner filed Forms 1040X, Amended U.S. Individual Income Tax Return (amended returns), for her 1991, 1992, and 1993 tax years.  On these amended returns petitioner claimed Schedule C losses from Sweets 'N' Things of $3,910, $5,254, and $569, respectively, for 1991, 1992, and 1993.

Prior to issuing the notice of deficiency for 1991, 1992, and 1993, respondent issued separate Revenue Agent's Reports (RAR) to Special Occasions and Special O in which respondent made adjustments in income and deductions.  Respondent used the bank

deposits method to make the relevant income adjustments.
Proportionate shares of these adjustments with respect to
petitioner's interests in these entities were reflected in the
notice of deficiency issued to petitioner.

In the notice of deficiency for 1991, 1992, and 1993,
respondent made the following adjustments to petitioner's income:

| Adjustment to Income (Increase/(Decrease)) | 1991 | 1992 | 1993 |
|---|---|---|---|
| Special Occasions | $ 1,967 | $ 5,888 | $ 6,285 |
| Klyce Day Care | 4,989 | 1,989 | 3,200 |
| Special O income | 10,237 | 10,374 | 14,866 |
| Sec. 179 depreciation[1] | -- | -- | (211) |
| Sweets 'N' Things | (1,833) | (1,586) | (998) |
| Self-employment tax ded.[2] | -- | (105) | (184) |
| Net increase in income | $15,360 | $16,560 | $22,958 |

[1] Allowed in connection with Special O.

[2] Respondent determined that petitioner was liable for
self-employment taxes of $210 for 1992 and $367 for 1993.

Prior to trial, the parties stipulated to each item of
income and expense in connection with Sweets 'N' Things for 1991,
1992, and 1993, with the exception of a supply and equipment
expense deduction for 1991 and a food expense deduction for 1992.
With respect to Special Occasions, the parties stipulated that
Special Occasions did not sustain a loss for 1991.  The parties
further stipulated each item of income and expense in connection
with Special Occasions for 1992 and 1993, with the exception of

(1) the correct amount of gross income for 1992 and 1993, and (2) interest expense deductions for 1992 and 1993. Finally, the parties stipulated each item of income and expense in connection with Special O for 1991, 1992, and 1993, with the exception of (1) travel expense deductions for 1991, 1992, and 1993; (2) interest expense deductions for 1991, 1992, and 1993; (3) the correct amount of gross income for 1992 and 1993; and (4) a section 179 expense deduction for 1993. At trial, petitioner conceded the interest expense deductions for 1991, 1992, and 1993, with respect to Special O and the interest expense deductions of Special Occasions for 1992 and 1993.[3]

Section 61 defines gross income as all income from whatever source derived. With respect to a partnership, each partner shall take into account separately his or her distributive share of the partnership's taxable income or loss. See secs.

---

[3] Notices of deficiency were issued by respondent to each of petitioner's sisters, making adjustments to income and deductions that flowed through to them from the entities in which they were involved with petitioner. Each of the sisters filed a petition with this Court. Their cases, the years involved, and the opinions of the Court are referenced as follows:

Johnny and Faye W. Oatis, docket No. 17068-96S, 1992 and 1993, T.C. Summary Opinion 1998-88

Barbara J. Wilson, docket No. 17067-96S, 1992 and 1993, T.C. Summary Opinion 1998-99

Marian Wilson, docket No. 12687-97, 1991, 1992, and 1993, T.C. Memo. 1999-141

61(a)(13), 702(a)(8). With respect to an S corporation, a shareholder shall take into account his or her pro rata share of the corporation's losses and deductions to the extent that the total losses and deductions do not exceed the sum of the adjusted basis of the shareholder's stock and the shareholder's adjusted basis of any indebtedness of the S corporation to the shareholder. See sec. 1366(d)(1).

The first issue is whether petitioner is entitled to net operating loss carryforwards from her 1985, 1986, and 1987 tax years to her 1988, 1989, and 1990 tax years. Petitioner reported negative taxable income amounts of $9,771 and $17,928 on her Federal income tax returns for 1985 and 1986, respectively. On her 1986 return, petitioner claimed a $9,771 net operating loss carryover from 1985. On her 1987 return, petitioner reported adjusted gross income of $3,269 and zero taxable income. On September 12, 1989, petitioner filed an amended return for 1987 claiming a $27,699 net operating loss carryover from 1986, plus a $14,750 loss from an unidentified partnership, for a total loss of $39,180.[4]

---

[4] The $27,699 loss carried over from 1986 to 1987 results from the $9,771 loss reported for 1985 plus the $17,928 loss reported for 1986. The $39,180 total loss claimed for 1987 results from the $27,699 loss carried over from 1986 plus the $14,750 unidentified partnership loss reported for 1987, minus the $3,269 adjusted gross income previously reported for 1987.

Respondent determined, and petitioner agrees, that petitioner had adjusted gross income amounts of $24,420, $8,623, and $16,347 for 1988, 1989, and 1990, respectively. Petitioner contends that she should be allowed to carry forward her cumulative losses from 1985, 1986, and 1987 to her 1988, 1989, and 1990 tax years in the amounts of $39,180, $14,758, and $6,134, respectively. Respondent contends that petitioner is not entitled to carry forward her losses from these years because petitioner failed to make an irrevocable election on her returns for each of these years, as required by section 172(b)(3)(C), to relinquish the 3-year carryback period provided in section 172(b)(1)(A).

In general, section 172 allows a deduction for an amount equal to the aggregate of the net operating loss carryover to a taxable year plus the net operating loss carryback to that year. See sec. 172(a). Section 172(b), as in effect for the years at issue, required that a net operating loss first be carried back to each of the 3 previous taxable years and, if it was unabsorbed by those years, that the remaining portion be carried forward to the 15 following taxable years. See sec. 172(b)(1) and (2).

Section 172(b)(3)(C), however, provides that a taxpayer may elect to relinquish the entire carryback period and carry forward the loss to the taxable years following the loss year. That section further provides:

(C) * * * Such election shall be made in such manner as may be prescribed by the Secretary, and shall be made by the due date (including extensions of time) for filing the taxpayer's return for the taxable year of the net operating loss for which the election is to be in effect.  Such election, once made for any taxable year, shall be irrevocable for that taxable year.

The regulations, in accord with the statute, provide that the "election must be made by the later of the time, including extensions thereof, prescribed by law for filing income tax returns for such taxable year or March 8, 1977."  Sec. 7.0(b)(1), Temporary Income Tax Regs., 42 Fed. Reg. 1469 (Jan. 7, 1977),[5] which regulation is entitled Various Elections Under the Tax Reform Act of 1976.  As to the manner in which the election is to be effected, section 2, Temporary Income Tax Regs., 42 Fed. Reg. 1470 (Jan. 7, 1977), provides:

(d) Manner of making election. Unless otherwise provided in the return or in a form accompanying a return for the taxable year, the elections described * * * shall be made by a statement attached to the return (or amended return) for the taxable year. The statement required when making an election pursuant to this section shall indicate the section under which the election is being made and shall set forth information to identify the election, the period for which it applies, and the taxpayer's basis or entitlement for making the election.  [Emphasis added.]

---

[5]    The regulation was redesignated in 1992 as sec. 301.9100-12T, Temporary Income Tax Regs., 57 Fed. Reg. 4393 (Sept. 23, 1992).

The Court analyzed these requirements in Young v. Commissioner, 83 T.C. 831 (1984), affd. 783 F.2d 1201 (5th Cir. 1986). In Young, the taxpayers sustained a net operating loss in 1976. On their 1976 Federal income tax return, the taxpayers reported their taxable income as "None." On a Form 4625, Computation of Minimum Tax, attached to that return, the taxpayers entered on line 11 the amount of their 1976 net operating loss carryover to 1977. That return contained no other information concerning the taxpayers' 1976 net operating loss or net operating losses from other years. See id. at 832. On December 2, 1980, respondent received from the taxpayers an amended Federal income tax return for 1976; the taxpayers attached a statement thereto entitled Net Operating Loss Computation. That statement contained a recalculation of the taxpayers' 1976 net operating loss and the following declaration:

### ELECTION

In accordance with regulation section 7.0(d) taxpayer elects or has previously elected to forgo the carry back period of the 1976 net operating loss deduction.

Id. at 833. On these facts, the Court concluded in Young that the taxpayers neither literally nor substantially complied with the election requirements of the regulations at section 7.0(d), Temporary Income Tax Regs., 42 Fed. Reg. 1470 (Jan 7, 1977). Young v. Commissioner, supra at 836.

In Young, the Court held that a taxpayer is required to attach a separate statement with the requisite information to the return itself.  The Court held further that the taxpayers' lack of taxable income for the return year did not constitute such a separate statement.  The Court stated:

> That petitioners reported no taxable income for 1976 indicates nothing concerning either the existence or the extent of a net operating loss for that year, or any intention to carry the net operating loss forward or backward. * * * [Fn. ref. omitted.]

Id. at 837.  The Court stated further that the taxpayers' entry on the Form 4625 attached to the 1976 return "[indicated] nothing with respect to the amount of a 1976 net operating loss, or [the taxpayers'] intent to relinquish the carryback period for such loss."  Id.

Here, petitioner did not comply with the express requirements of section 172, and the regulations thereunder, for 1985, 1986, and 1987 to relinquish the carryback of the net operating losses sustained for these years.  Petitioner did not attach a separate statement to either her 1985, 1986, or 1987 return, or to her amended return for 1987, for the required election under section 172(b)(3)(C).[6]

---

[6] Moreover, even if the 1987 amended return contained an election, the election would be ineffective or invalid.  In Young v. Commissioner, supra, this Court concluded that the taxpayer's

(continued...)

This Court further stated in Young v. Commissioner, supra at 839:

> as an absolute minimum, the taxpayer must exhibit in some manner, within the time prescribed by the statute, his unequivocal agreement to accept both the benefits and burdens of the tax treatment afforded by that section. * * *

The rationale for the required election, as explained by the Court, is to prevent the taxpayer from being allowed to wait and see how a net operating loss can best be utilized; in making the election irrevocable, the statute forecloses the taxpayer from later claiming that he never intended to make the election. See Young v. Commissioner, supra, 83 T.C. at 839. None of the relevant returns in the present case clearly expresses an intention on the part of petitioner to forgo the carryback of a

---

[6](...continued) "amended return is irrelevant" in determining substantial compliance with the election requirements. Young v. Commissioner, supra, 83 T.C. at 840-841. In rejecting the taxpayer's argument that sec. 7.0(d), Temporary Income Tax Regs., 42 Fed. Reg. 1469 (Jan 7, 1977), provides that an election may be made in an amended return, the Court explained:

> This is true; however, in order to square the regulation with the directive of the statute, an election made in a subsequently filed return can only be effective if the subsequently filed return is filed before the due date of the return.

Young v. Commissioner, supra, 83 T.C. at 841 n.9. In this case, petitioner's 1987 amended return was filed more than 1 year after the due date of the original return, and there was no evidence in the record with respect to any extensions for filing.

net operating loss.  On this record, the Court holds that petitioner did not make a valid election under section 172(b)(3)(C) for 1985, 1986, or 1987.

Under section 172(b)(2), in the event a proper election is not made under section 172(b)(3)(C), a carryforward of any net operating loss is allowable only to the extent that the loss exceeds the taxable income for the years of a carryback, regardless of whether a carryback was in fact claimed.  Lone Manor Farms, Inc. v. Commissioner, 61 T.C. 436, 441-442 (1974), affd. without published opinion 510 F.2d 970 (3d Cir. 1975); sec. 1.172-4(b)(1) and (2), Income Tax Regs.  Petitioner did not offer any evidence to show that the claimed 1985, 1986, and 1987 net operating losses would not have been absorbed through the operation of the 3-year carryback.[7]  Consequently, the Court holds that petitioner is not entitled to carry over her claimed net operating losses from 1985, 1986, and 1987 to her 1988, 1989, and 1990 tax years.[8]  Respondent is sustained on this issue.

---

[7]  The record reflects that petitioner reported $17,774 in adjusted gross income and $7,751 in taxable income for 1982 and $10,362 in adjusted gross income and $4,022 in taxable income for 1983.  The record does not reflect petitioner's income for 1984.

[8]  Petitioner argues, in the alternative, that she should be allowed to carry back her claimed losses for 1985, 1986, and 1987 to her 1982, 1983, and 1984 tax years; however, these tax years are not presently within the jurisdiction of this Court.  Thus, the Court is unable to consider such an argument in this case.

The second issue relates to several expenses petitioner claimed in the various activities in which she was engaged, described earlier.

Section 162(a) allows a deduction for "all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business". Sec. 162(a). An expense must be both ordinary and necessary within the meaning of section 162(a). See Deputy v. duPont, 308 U.S. 488, 495 (1940). Whether an amount in question constitutes an ordinary and necessary expense incurred in the operation of the taxpayer's trade or business is a question of fact to be determined from the evidence presented. See Welch v. Helvering, 290 U.S. 111 (1933); Allen v. Commissioner, T.C. Memo. 1988-166.

The first expense item is $948, which petitioner claims she is entitled to deduct as expenses incurred in connection with her Klyce Day Care activity during 1990.

In substantiation of this item, petitioner presented photocopies of the following 10 canceled checks, which bore an imprinted address of "Klyce Day Care, 1828 Rosedale Ave., Oakland, CA 94601":

| Ck. No. | Date | Payee | Amount |
|---------|------|-------|--------|
| 2295 | 1/12/90 | O.L.D.C.O.A.-B.B. | $ 39.05 |
| 2301 | 1/22/90 | Pacific Gas & Electric | 237.62 |
| 2302 | 1/22/90 | Oakland Scavenger Co. | 64.18 |
| 2303 | 1/26/90 | Standard Brands | 11.99 |
| 2306 | 2/09/90 | Pacific Bell | 64.00 |
| 2308 | 2/12/90 | E.B.M.U.D. | 59.89 |
| 2316 | 3/22/90 | AT&T | 41.01 |
| 2317 | 3/22/90 | Oakland Scavenger Co. | 32.09 |
| 2318 | 3/22/90 | Pacific Bell | 84.18 |
| 2319 | 3/22/90 | Pacific Gas & Electric | 314.14 |
| Total | | | $948.15 |

Petitioner failed to identify O.L.D.C.O.A.-B.B. and E.B.M.U.D.; thus, the Court has no way of surmising to whom these checks were paid and for what purpose. Petitioner further failed to provide evidence as to the identity of Oakland Scavenger Co. or Standard Brands and the purpose for which the aforementioned checks were paid thereto.

Petitioner admits that the claimed expenses were incurred solely for the care of one child between January and March 1990; however, petitioner provided no details surrounding the operation of Klyce Day Care during this time; i.e., location, hours of operation, services provided, existence of employees, and so forth. The Court is not persuaded that monthly gas and electric bills of $237.62 and $314.14, as well as monthly telephone bills of $64 and $125.19,[9] were attributable to the care of only one

---

[9] On Mar. 22, 1990, checks were written to AT&T in the amount
(continued...)

child.  The record does not disclose the number of phone calls, if any, made in those months in connection with a day care activity for the care of only one child, nor does the record show that it was necessary to incur significant long-distance telephone charges in connection with the care of that child. These expenses were more likely personal expenses of petitioner that were paid out of an account in the name of Klyce Day Care and, as such, are not deductible as trade or business expenses under section 162(a).[10]

The next item is supply and equipment expense and food expense deductions for 1991 and 1992, respectively, in connection with Sweets 'N' Things.  Petitioner contends she is entitled to a deduction for the food expenses in amounts greater than that allowed by respondent.  On her 1991 amended return, petitioner claimed $3,568 for supply and equipment expenses.  The entire amount was disallowed by respondent.  Petitioner did not present evidence to satisfy the Court that she is entitled to a supply

---

[9](...continued)
of $41.01 and Pacific Bell in the amount of $84.18, totaling $125.19.

[10]     Sec. 262(a) provides generally that no deduction shall be allowed for personal, living, or family expenses.  Sec. 262(b) provides further that, for purposes of subsec. (a), in the case of an individual, any charge for basic local telephone service with respect to the first telephone line provided to any residence of the taxpayer shall be treated as a personal expense.

and equipment expense deduction for any amount for 1991. The Court sustains respondent's disallowance of this expense.

On her 1992 amended return, petitioner claimed $4,290 for food expenses that was disallowed by respondent. In the stipulation, respondent conceded that petitioner was entitled to a $922 food expense deduction in connection with Sweets 'N' Things for 1992. Petitioner did not present evidence to satisfy the Court that she is entitled to a food expense deduction greater than the amount conceded by respondent. The Court holds that petitioner is not entitled to a deduction in excess of the amount conceded by respondent.

The next item is whether petitioner is entitled to travel expense deductions for 1991, 1992, and 1993 in connection with Special O. Respondent disallowed travel expenses claimed by Special O in the amounts of $740.81, $2,497, and $1,529 for 1991, 1992, and 1993, respectively. Petitioner contends that travel expenses were incurred by Special O for various trips taken by petitioner and the other shareholders during 1991, 1992, and 1993.

A taxpayer is required to maintain records sufficient to establish the amount of his or her income and deductions. See sec. 6001. Under certain circumstances, where a taxpayer establishes entitlement to a deduction but does not establish the amount of the deduction, the Court is allowed to estimate the

amount allowable.  See Cohan v. Commissioner, 39 F.2d 540 (2d Cir. 1930).  However, there must be sufficient evidence in the record to permit the Court to conclude that a deductible expense was incurred in at least the amount allowed.  See Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957).  In estimating the amount allowable, the Court bears heavily against the taxpayer whose inexactitude is of his or her own making.  See Cohan v. Commissioner, supra at 544.

However, as to travel expenses, specifically including meals and lodging while away from home, as well as in the case of entertainment expenses and expenses with respect to listed property, section 274(d) overrides the so-called Cohan doctrine. See Sanford v. Commissioner, 50 T.C. 823, 827 (1968), affd. per curiam 412 F.2d 201 (2d Cir. 1969); sec. 1.274-5T(a), Temporary Income Tax Regs., 50 Fed Reg. 46014 (Nov. 6, 1985).  Section 274(d) imposes stringent substantiation requirements for deductions related to travel, entertainment, gifts, and "listed property (as defined in section 280F(d)(4))".  Passenger automobiles are listed property under section 280F(d)(4)(i). Section 274(d) denies these deductions unless:

> the taxpayer substantiates by adequate records or by sufficient evidence corroborating the taxpayer's own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, amusement, recreation, or use of the facility or property, or the date and description of the gift, (C)

the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained, using the facility or property, or receiving the gift. * * *

Thus, under section 274(d), deductions for automobile expenses, travel expenses, and meals and entertainment expenses may not be estimated. Instead the taxpayer must provide adequate records or corroborate testimony with other evidence.

If a taxpayer travels to a destination and, while at such destination, engages in both business and personal activities, traveling expenses to and from such destination are deductible only if the trip is primarily related to the taxpayer's trade or business. See sec. 1.162-2(b)(1), Income Tax Regs. If a trip is primarily personal in nature, traveling expenses to and from the destination are not deductible even if the taxpayer engaged in some business activities at the destination. See id. However, expenses while at the destination that are properly allocable to the taxpayer's trade or business are deductible even though the traveling expenses to and from the destination are not deductible. See id.

Whether travel is related primarily to the taxpayer's trade or business, or is primarily personal, is a question of fact. See sec. 1.162-2(b)(2), Income Tax Regs.; see also Holswade v. Commissioner, 82 T.C. 686, 698, 701 (1984). The amount of time during the period of the trip that is spent on personal activity, compared to the amount of time spent on activities directly

relating to the taxpayer's trade or business, is an important factor in determining whether the trip is primarily personal. See sec. 1.162-2(b)(2), Income Tax Regs.

Petitioner claims that she traveled to San Diego, California, and Mexico during 1991 in an effort to purchase less expensive garments and materials for the manufacture of garments. During 1992, petitioner contends she traveled to Los Angeles to attend a clothing market for the wholesale purchase of various garments for resale in the retail market. Petitioner also claims that she traveled to New Orleans, Louisiana, during 1992 for the purpose of attending the Black Expo, at which she maintained a booth and dispensed information and merchandise to attendees there. The testimony at trial indicated that another purpose for attending the Black Expo was to develop a mail-order business for Special O. Petitioner contends further that she made another garment and fabric-purchasing trip during 1993 to San Diego, California, and Yuma, Arizona.

Petitioner testified that, during her 1991 trip to Mexico, she visited Tijuana and purchased jewelry and a purse, but she produced no evidence to show that these items were purchased for a business purpose rather than for her own personal use. Petitioner admitted that the majority of her 1992 trip to New Orleans was spent visiting relatives at Baton Rouge, Louisiana. Petitioner also admitted that, during the Black Expo, she stayed

with her relatives in Baton Rouge and rented a van to drive to New Orleans each day for the expo.  With respect to the 1993 trip to Yuma, Arizona, petitioner claims she visited several fabric stores but was unable to provide the names or locations of any such stores or produce any evidence that she made purchases at such stores.

The Court is not satisfied that petitioner, on behalf of Special O, engaged in any business travel during 1991 or 1993. Moreover, even if the Court were to hold that petitioner made business trips (as opposed to trips for personal pleasure) to Mexico, San Diego, and Yuma during 1991 and 1993, or engaged in any other business travel during those years, the strict substantiation requirements of section 274(d) have not been satisfied with respect to any such travel.  On the entire record, the Court holds that no travel expenses are deductible by Special O for 1991 or 1993.

The Court is satisfied, however, that petitioner attended the Black Expo in New Orleans during 1992 for a proper business purpose in connection with Special O.  However, the Court is likewise convinced that the primary purpose for petitioner's trip in this regard was the personal purpose of visiting relatives in Baton Rouge.  Thus, only those expenses properly allocable to the business of Special O would be deductible but the travel to and from New Orleans would not be deductible.

Petitioner produced a photocopy of a $325 money order, purchased on June 3, 1992, by one of the other shareholders of Special O, Marian Wilson, with the payee listed as Black Expo USA. Petitioner failed to produce evidence sufficient to show, within the strict substantiation parameters of section 274(d), that any other expenses were incurred in connection with the New Orleans trip that would be deductible by Special O.[11] In connection with the $325 payment to Black Expo USA, in order for petitioner to be entitled to a deduction for her allocable share of such expense (derivatively through the net profit or loss of Special O), the expense must have been incurred by Special O. The record shows that the $325 was paid by Marian Wilson, one of the shareholders of Special O. The record does not show whether Special O reimbursed Marian Wilson the $325. A corporation is not entitled to deduct unreimbursed shareholder expenses. See Lang Chevrolet Co. v. Commissioner, T.C. Memo. 1967-212. Special O, therefore, could not have claimed a deduction for this item unless Special O reimbursed the expense to the shareholder who

---

[11] Petitioner produced a rental car contract from Audubon Rent-A-Car in Baton Rouge, Louisiana, signed by one of the other Special O shareholders, showing a $289.71 payment for rental of a vehicle (the type of which is unidentifiable on the face of the contract) from Nov. 27 through Nov. 30, 1992. Although the Court is satisfied that this vehicle was rented during the relevant New Orleans trip, the Court is not convinced that this expense is primarily related to or properly allocable to Special O. Even if viewed as a "travel to and from a destination" expense, it is not deductible. Sec. 1.162-2(b)(1), Income Tax Regs.

incurred the expense.  Petitioner, therefore, has failed to establish that the $325 was a deductible expense incurred by Special O.[12]

The third issue is the proper amount of gross income attributable to Special Occasions and Special O for 1992 and 1993.  Because Special Occasions and Special O did not maintain adequate books and records, respondent used the bank deposits method to reconstruct the income of both entities.  The use of the bank deposits method to reconstruct income is well established and has been sanctioned by the courts.  See DiLeo v. Commissioner, 96 T.C. 858, 868 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Nicholas v. Commissioner, 70 T.C. 1057, 1064 (1978).

The Commissioner is required to take into account any nontaxable sources of deposits or deductible expenses of which the Commissioner is aware.  See DiLeo v. Commissioner, supra at 868.  The testimony of a taxpayer unsupported by documentary evidence may be insufficient to cast doubt upon the

---

[12]   In Wilson v. Commissioner, T.C. Memo. 1999-141, involving the 1992 tax year of Marian Wilson, who was the shareholder in Special O who paid the $325 in question, it was stipulated that the travel expenses claimed by Special O had been paid from the personal funds of the shareholders of Special O.  In the subject case, the Court held that Marian Wilson had not established that such travel expenses had been reimbursed to her, and, therefore, travel expenses paid for in the manner stipulated were not deductible by Special O.

Commissioner's determination. See <u>Alvarez v.Commissioner</u>, T.C. Memo. 1995-414.

The parties stipulated that nontaxable deposits were made into the shared bank account of Special Occasions and Special O. Respondent conceded that the total dollar amounts of unexplained bank deposits from the shared bank account should be reduced to $610 and $1,362 for 1992 and 1993, respectively, and that these amounts should be divided equally between Special Occasions and Special O.

Petitioner presented no evidence to show that any other unexplained bank deposits into the shared account were nontaxable deposits. Petitioner failed to introduce cash register receipts, canceled checks, credit card statements, or bank deposit receipts to substantiate the source of unexplained bank deposits. Moreover, petitioner failed to convince the Court of any impropriety concerning respondent's equal division of taxable bank deposits between Special Occasions and Special O. As noted earlier, the funds of Special Occasions and Special O were commingled. Consequently, on this record, the Court sustains the amount of income determined (after concessions) by respondent in connection with Special Occasions and Special O for 1992 and 1993.

The fourth issue is whether petitioner is entitled to a section 179 expense deduction for 1993 in connection with Special

O in an amount greater than that allowed by respondent. For 1993, Special O claimed a section 179 expense deduction of $10,570 for computers and related equipment. In the RAR for Special O, respondent disallowed this deduction, in part, due to lack of documentation to substantiate the cost of computer and other such equipment.[13] Respondent determined that Special O failed to substantiate entitlement to any additional section 179 expense deduction for 1993. Alternatively, respondent contends that Special O is not entitled to any additional section 179 expense deduction for 1993 under section 179(b)(3)(A) because Special O's taxable income for 1993 did not exceed the section 179 amount that was allowed.

Section 179 allows a taxpayer to elect to treat the cost of section 179 property as a current expense in the year such property is placed in service, within certain dollar limitations. See sec. 179(a). An election under section 179 must be made on the taxpayer's original return for the taxable year or an amended return filed timely. See sec. 179(c)(1)(B); sec. 1.179-5(a), Income Tax Regs. Once made, this election may not be revoked "except with the consent of the Secretary." Sec. 179(c)(2); sec.

---

[13] In the notice of deficiency, respondent allowed petitioner a $211 expense deduction under sec. 179 in connection with Special O for 1993. The record does not reflect the specific property for which this deduction was allowed, nor does the record reflect respondent's reasons for allowing the deduction.

1.179-5(b), Income Tax Regs. Moreover, the taxpayer shall maintain records that permit specific identification of each piece of section 179 property and that reflect how and from whom such property was acquired and when such property was placed in service. See sec. 1.179-4(a), Income Tax Regs. The expense deduction under section 179(a) for any tax year "shall not exceed the aggregate amount of taxable income of the taxpayer for such taxable year which is derived from the active conduct by the taxpayer of any trade or business during such taxable year"; however, any amount disallowed may be carried forward to later taxable years. See sec. 179(b)(3)(A) and (B).

Petitioner submitted photocopies of various invoices and receipts to support her contention that Special O placed in service during 1993 a word processor, an awning with lettering, a computer, a laser printer, and two telephones, having a total cost of $7,656.99.

After examining the submitted invoices and receipts, the Court is not satisfied that Special O purchased the subject property in the claimed amounts during 1993. Moreover, for any property that the Court is satisfied was purchased during 1993, the Court is not convinced that such property was purchased by, or on behalf of, Special O in connection with the business of Special O and was not used for personal purposes of the shareholders. The evidence fails to satisfy the Court that, with

respect to the asserted items of property, Special O has satisfied the requirements of section 179 in order to claim a greater expense deduction for 1993 than that allowed by respondent. Moreover, even if the Court were to conclude that Special O purchased the property in question, it can only be expensed to the extent of the aggregate taxable income for the taxable year. Respondent has allowed Special O a sec. 179 deduction for $211, and petitioner has not shown that Special O's taxable income for 1993 exceeded $211. Therefore, even if the purchase of the property in question had been established, there could be no additional sec. 179 expense deduction allowed for 1993. Respondent is sustained on this issue.

The fifth issue is whether petitioner is entitled to net operating loss carrybacks from her 1991, 1992, and 1993 tax years to her 1988, 1989, and 1990 tax years. The Court's various holdings herein establish that petitioner failed to show that she sustained net operating losses for 1991, 1992, and 1993 to carry back to 1988, 1989, and 1990. Because of the absence of net operating losses for 1991, 1992, and 1993, her claim to carrybacks is denied.

The final issue is whether petitioner is liable for additions to tax and penalties. The first is the addition to tax under section 6651(a)(1) for failure to file timely Federal income tax returns for 1988, 1989, 1990, 1991, and 1992. Section

6651(a)(1) imposes an addition to tax for a taxpayer's failure to file timely returns, unless the taxpayer can establish that such failure "is due to reasonable cause and not due to willful neglect". Petitioner did not file Federal income tax returns for 1988, 1989, and 1990. Petitioner's 1991 and 1992 Federal income tax returns were due to be filed on or before April 15, 1992, and 1993, respectively. These returns were filed in October 1993.

Petitioner did not establish that her failure to file timely Federal income tax returns for 1988 through 1993 was due to reasonable cause and not due to willful neglect. Petitioner's position is that she did not file income tax returns for 1988, 1989, and 1990 because she believed that the net operating loss carryforwards from prior years would have negated any income tax liabilities for the years 1988 through 1990. Petitioner conceded, however, that she realized gross income in these 3 years. Her erroneous belief that no taxes are due does not constitute reasonable cause for the failure to file an income tax return. Krieger v. Commissioner, T.C. Memo. 1993-347. Petitioner advanced no reasons why her income tax returns for 1991 and 1992 were not filed timely. Respondent, therefore, is sustained on the addition to tax under section 6651(a)(1).

The next addition to tax is under section 6654(a) for failure to pay estimated taxes for 1988 and 1990. Section 6654(a) provides for an addition to tax "in the case of any

underpayment of estimated tax by an individual".  There is no exception contained therein relating to reasonable cause and lack of willful neglect.  Subject to certain exceptions provided by statute, this addition to tax is otherwise automatic if the amounts of the withholdings and estimated tax payments do not equal statutorily designated amounts.  See <u>Niedringhaus v. Commissioner</u>, 99 T.C. 202, 222 (1992).  Petitioner made no prepayments of taxes for 1988 and 1990.

In the reply brief, respondent agrees that, with respect to petitioner's 1988 tax year, the section 6654(a) addition to tax is not applicable and conceded this addition to tax for that year.  Section 6654(e)(2) provides an exception to the section 6654(a) addition to tax if, among other conditions that petitioner has met, the taxpayer did not have any liability for tax for the preceding taxable year.  Respondent agrees that petitioner's Federal income tax return for 1987 did not reflect any tax liability.  Therefore, petitioner is not liable for the section 6654(a) addition to tax for 1988; however, respondent is sustained on this issue for 1990.

Respondent determined that petitioner was liable for accuracy-related penalties under section 6662(a) for negligence or disregard of rules or regulations for 1991, 1992, and 1993.  Section 6662(a) provides that, if it is applicable to any portion of an underpayment in taxes, there shall be added to the tax an

amount equal to 20 percent of the portion of the underpayment to which section 6662 applies. Section 6662(b)(1) provides that section 6662 shall apply to any underpayment attributable to negligence or disregard of rules or regulations.

Section 6662(c) provides that the term "negligence" includes any failure to make a reasonable attempt to comply with the provisions of the internal revenue laws, and the term "disregard" includes any careless, reckless, or intentional disregard of rules or regulations. Negligence is the lack of due care or failure to do what a reasonable and ordinarily prudent person would do under the circumstances. See Neely v. Commissioner, 85 T.C. 934, 947 (1985).

However, under section 6664(c), no penalty shall be imposed under section 6662(a) with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. The determination of whether a taxpayer acted with reasonable cause and in good faith depends upon the facts and circumstances of each particular case. See sec. 1.6664-4(b)(1), Income Tax Regs. Relevant factors include the taxpayer's efforts to assess his or her proper tax liability, the knowledge and experience of the taxpayer, and reliance on the advice of a professional, such as an accountant. See Drummond v. Commissioner, T.C. Memo. 1997-71, affd. in part, revd. in part

without published opinion 155 F.3d 558 (4th Cir. 1998).  However, the most important factor is the extent of the taxpayer's effort to determine the taxpayer's proper tax liability.  See sec. 1.6664-4(b)(1), Income Tax Regs.  An honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge, and education of the taxpayer may indicate reasonable cause and good faith.  See Remy v. Commissioner, T.C. Memo. 1997-72.

In the notice of deficiency, respondent applied the section 6662(a) penalty to all adjustments for 1991, 1992, and 1993.  For all 3 years, the underpayments resulted from respondent's adjustments to the income and expenses of Klyce Day Care, Sweets 'N' Things, Special Occasions, and Special O.

On this record, the Court finds that petitioner negligently or intentionally disregarded rules or regulations with regard to the adjustments in the notice of deficiency for 1991, 1992, and 1993.  Petitioner did not exercise due care in maintaining adequate records of her income and expenses.  As to two of the activities in which petitioner was engaged, her books and records were so inaccurate that respondent was compelled to use an indirect means of determining what her gross income was.  Very few of petitioner's claimed expenses were substantiated.  Some of her expenses were for personal purposes.  Accordingly, the

imposition of the accuracy-related penalty under section 6662(a) for 1991, 1992, and 1993 is sustained.

<u>Decisions will be entered under Rule 155.</u>